**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| LEETRAVIS GRIFFIN,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, *et al.,*<br><br>Defendants. | Case No. 3:24-cv-00066-PPS-JEM |

**STATE DEFENDANTS' REPLY IN SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**

State Defendants, Dawn Buss, Darnell Crockett, Kevin Cross, Dennis Koen, Ron Neal, Jacqueline Mayes, Nadine Smith-Robinson, Jeniene Walton, Douglas Wardlow, Deborah Taylor, Gordon Becher, and Christina Reagle ("State Defendants"), by counsel, respectfully submit this reply brief in support of their motion for summary judgment [ECF 131].[1]

## I. State Defendants move to strike several pieces of Plaintiff's evidence.

Pursuant to Northern District Local Rule 56-1(f), Defendants move to strike various pieces of Plaintiff's evidence. In evaluating a summary judgment motion, the court may consider as evidence properly authenticated and admissible documents or exhibits. *Scott v. Edinburg*, 346 F.3d 752, 760 n. 7 (7th Cir. 2003); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2001). Defendants move to strike several portions of Pierre Taylor's declaration (ECF 145-2) and several other pieces of evidence that Plaintiff attempts to rely on to survive summary judgment.

### A. The Court cannot take judicial notice of the discovery filed in *Phillips v. Neal* to try to establish the facts in this case.

[1] Defendants Dawn Buss Ron Neal, Douglas Wardlow, Deborah Taylor, Gordon Becher and Christina Reagle are collectively referred to interchangeable as Supervisory Defendants and High Ranking Defendants throughout this brief. Defendants Darnell Crockett, Kevin Cross, Dennis Koen, Jacqueline Mayes, Nadine Smith-Robinson, and Jeneine Walton are collectively referred to interchangeably as Custody Defendants or Incident Defendants.

Throughout his response brief, Plaintiff asks the Court to take judicial notice of some of the discovery filed in another related matter, *Phillips v Neal*, Cause No. 3:24-cv-00045-PPS-JEM (N.D. Ind. filed Mar. 27, 2024) (hereinafter "*Phillips v. Neal*" or "*Phillips*"). State Defendants object to the Plaintiff's request as Plaintiff misunderstands the mechanics of judicial notice under Federal Rule of Evidence 201.

While Plaintiff is correct that a court can take judicial notice of public court documents, *see, e.g.*, *Carter v. Sturgeon*, 643 F. Supp. 3d 862, 865 (N.D. Ind. 2022), Plaintiff cannot rely on judicial notice of another cases filed discovery in his attempt to establish facts in ***this*** case. Thus, generally, the Court take notice of the existence of such documents rather than the truth of factual matters set forth therein. *Id.* Plaintiff improperly asks the Court to take judicial notice of the contents of the discovery documents and discovery responses filed in *Phillips* instead of rely on the discovery and record in ***this*** case. "Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

The docket entries for the *Phillips* case cited by Plaintiff through his response brief are not the type of adjudicative facts that may be judicially noticed under Federal Rule of Evidence 201.[2] See Fed. R. Evid 201(a), (b). It is not the burden of this Court to rely on the record of *Phillips* and search the record in *Phillips* to ensure that Plaintiff's factual contentions are supported (as shown below many of those contentions are not). Plaintiff's citations seem to be primarily to discovery documents filed with the Court in the *Phillips* case, which is hardly the kind of "universal truth" for which judicial notice is appropriate. Plaintiff lazy approach to his citations appears based on his belief that is for "the sake of clarity and convivence, and because the facts are fundamentally the same." (ECF 145-1 at 12 n. 2).

[2] Plaintiff's citations to the Phillips docket are referred to as "DE". (ECF 145-1 at 12 n.2)

However, Plaintiff ignores that his deposition testimony is not "fundamentally the same" as Phillip's deposition transcripts. The differences in their experiences are critical in the Eighth Amendment analysis for the claims against the custody defendants. Accordingly, Plaintiff citation to the discovery materials in *Phillips* case must be disregarded rendering Plaintiff's contentions as unsupported statements that must be disregarded. *See Klein v. Daniels*, No. 2:19-CV-484-TLS, 2025 WL 33535, at *2 (N.D. Ind. Jan. 2, 2025) (Court disregarding unsupported factual statements on summary judgment). *See also Mace v. Ray*, No. 3:20-CV-412-MGG, 2022 WL 2644118, at *2 (N.D. Ind. July 8, 2022) ("'it is the responsibility of the Court to carefully review the parties' statements of material facts and genuine issues, and disregard any argument, conclusions, or assertions that are unsupported."). Thus, the Court should sustain Defendants' objections and render any statement referencing the discovery materials in the *Phillips* matter unsupported.

**B. Several portions of Plaintiff's Exhibit 1 (Pierre Taylor's declaration) should be stricken.**

Defendants move to strike portions of Plaintiff's Exhibit 1, the Declaration of Pierre Taylor. (*See* ECF 145-2).

First, Defendants move to strike portions of Plaintiff's Exhibit 1, the declaration of inmate Pierre Taylor. Mr. Taylor is a former inmate firefighter at the Indiana State Prison. (ECF 162-1 at ¶¶ 2, 7). Mr. Taylor was removed from the inmate fire fighter brigade after he was found guilty of trafficking in or around September 2024. (*See id.* at ¶¶ 5-7).

In Pierre Taylor's declaration, Pierre Taylor makes several vague statements that don't have any concrete dates, are conclusory in nature, not based on personal knowledge, grounded on hearsay (and at times hearsay within hearsay) and statements which he is not qualified to make as a lay witness.

Several legal standards govern the use of declarations used on summary judgment. "The rule governing summary judgment requires that a supporting or opposing affidavit 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent

to testify on the matters stated.'" *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum, LLC*, 653 F. Supp. 2d 895, 915 (N.D. Ind. 2009) (quoting Fed R. Civ. P. 56(e)(1)). "On a motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with Rule 56(e)." *Id.* (citing *Cooper–Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004) and *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987)). "Although 'self-serving statements in affidavits without factual support in the record carry no weight,' *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), 'a self-serving affidavit supported by facts in the record [can] defeat summary judgment,' and the record 'may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial,' *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted)." *Bitler Inv. Venture II*, 653 F. Supp. 2d at 915.

Summary judgment declarations "are for stating facts, not legal conclusions." *Greene v. Westfield Ins. Co.*, 963 F.3d 619, 627 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(4)). The personal knowledge requirement must not be "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Norfolk S. Ry. Co. v. Glob. Tower, LLC*, 620 F. Supp. 3d 784, 793 (N.D. Ind. 2022) (quoting *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)). Legal arguments in a declaration may also be disregarded because they are "an expression of legal opinion and is not a recitation of a 'fact' ...." *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985).

Under the sham affidavit doctrine, certain statements from Pierre Taylor's declarations should be disregarded. The sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition testimony or other sworn testimony. *Dunn v. Menard, Inc.*, 880 F.3d 899, 910 (7th Cir. 2018). Without the doctrine, even an affidavit "involv[ing] contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of

summary judgment" would in fact preclude summary judgment, *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015), because the court otherwise could not grant summary judgment without intruding upon "the jury's role in resolving questions of credibility," *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996).

A review of Pierre Taylor's declaration clearly shows that several of Pierre Taylor's statements are made without personal knowledge for the "facts" he attempts to attest to in what is clearly an attempt for Plaintiff to survive summary judgment.

First, starting on paragraph 10 of Pierre Taylor's declaration, Pierre Taylor states "none of the [A Cell House (ACH)] custody staff knew if they could evacuate ACH, how to properly evacuate ACH during a fire, nor did any of them possess the keys to the back door to properly evacuate ACH." (ECF 145-2 at ¶ 10). There is no basis upon which Pierre Taylor knows this. Pierre Taylor does not identify what ACH custody staff he is referring to here or that he was aware of what these unidentified ACH staff did or did not know. *See id.* The declaration does not identify the factual basis for Plaintiff's conclusory statement. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). On summary judgment, the nonmoving party cannot rest "upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (citation omitted). Pierre Taylor's statement in paragraph 10 contains no factual support in the record and thus must be stricken as it is not based on any personal knowledge and contains no factual support.

Next, paragraph 11 of Pierre Taylor's declaration must be disregarded and stricken as it relies on impermissible Rule 702 testimony. Pierre Taylor attests that "due to the amount of smoke and its density the ACH prisoners would need immediate medical attention." (ECF 145-2 at ¶ 11). But this is

Rule 702 testimony which offender Pierre Taylor is not qualified to make and not based on personal knowledge. Starting with the latter part of the statement, Pierre Taylor does not attest how he would have known what symptoms the inmates in ACH prisoners were experiencing. His declaration contains no facts of him evaluating any of the ACH inmates, speaking with them about what their symptoms were, or that he observed any of their symptoms. Instead, Pierre Taylor makes a conclusory statement about the ACH prisoners needing "immediate medical attention" as a conclusory statement seemingly to help Plaintiff meet the objective prong of the deliberate indifferent standard. *See Weaver*, 3 F.4th at 934 (stating a nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; but must go beyond the pleadings and support contentions with proper documentary evidence). The only "fact" that Pierre Taylor seemingly references to support this statement is grounded on inadmissible hearsay. In paragraph 12 of his declaration, Pierre Taylor says that he heard other nonparty unidentified inmates requesting medical attention and complaining about certain symptoms. (ECF 145-2 at ¶ 12). But this statement is inadmissible hearsay that must be disregarded on summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Therefore, Paragraph 12 of Pierre Taylor's declaration must be stricken. As a result, Pierre Taylor's statement in paragraph 11 is unsupported and likewise, must be disregarded and stricken.

The other problem with paragraph 11 of Pierre Taylor's declaration is that it contains impermissible testimony under Federal Rule of Evidence 702. Pierre Taylor is not a medical professional and cannot make statements about what medical need the offender population requires. Pierre Taylor is a lay person is not competent to offer testimony regarding any proposed medical condition, causation, diagnosis, or prognosis. Fed. R. Evid. 701, 702; *United States v. Cravens*, 275 F.3d 637, 641 (7th Cir. 2001) ("Although a lay person may readily observe a drug or alcohol problem, the causation of a mental disease or defect is a more technical medical determination such that a court

would find expert testimony particularly useful to its ultimate decision"); *McQuiston v. Helms*, 2009 WL 554101, at *11 (S.D. Ind. March 4, 2009) ("McQuiston cannot opine on medical causation or the impact of Dr. Brokaw's medical diagnosis on his ability to work in the future because those opinions would necessarily have to be 'based on scientific, technical, or other specialized knowledge.'"). As lay witnesses, Offender Pierre Taylor lacks the knowledge, skills, experience, training and education that would qualify them to testify about the nature of Plaintiff's alleged medical conditions, diagnosis, or the causation as Plaintiff attempts to do here. Thus, Pierre Taylor's impermissible Rule 702 testimony in paragraph 12 of his declaration must be disregarded.

Paragraphs 13, 14, 15, 16 in Pierre Taylor's declaration all conclusory statements which are also not grounded on personal knowledge either. *See* ECF 145-2 at ¶ 13-16. As an inmate firefighter, Offender Pierre Taylor was housed in one specific housing unit and is not at every single housing unit. Specifically at the time of the ACH January 2023 fire, Pierre Taylor was housed in I Cell House. (ECF 162-1 at ¶ 4). Pierre Taylor provides no facts in his declaration for how he allegedly knows what ISP staff are doing in other cell houses across the facility or how he is aware of each and every single time fire fighters should be released or how long it would take staff to call a fire signal. In fact, the inmate fire fighters are not all housing units at the same time when the fire drills are conducted. (ECF 162-1 at ¶ 12). Pierre Taylor's statements that "ISP staff members routinely do not release firefighters in a timely manner" and that "ISP staff members routinely do not immediately call fire signals" (ECF 145-2 at ¶ 13-14), are self-serving statements without factual basis. Pierre Taylor's vague statements are without any specific time period and without factual support that these are "problems" have been "repeatedly stressed" to Defendants Neal, Buss, Taylor, Becher, and Wardlow. *See id.* This kind of self-serving statement in affidavits without factual support in the record carry no weight, *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir.2004) (emphasis omitted). Moreover, it is unclear who has allegedly been reporting these alleged problems to Neal, Buss, Taylor, Becher, or Wardlow because

Pierre Taylor does not explain who is allegedly making these complaints to these Defendants. (ECF 145-2 at ¶¶ 13-14), To the extent, Pierre Taylor is reporting anything he has heard from others, then those statements would be inadmissible hearsay. *Gunville*, 583 F.3d at 985; Fed. R. Evid. 801 and 802. But again, Pierre Taylor does not explain how he would even have personal knowledge about what was allegedly reported to Defendants Neal, Buss, Taylor, Becher, and Wardlow. These statements without factual support carry no weight. *Butts*, 387 F.3d at 925.

The same is true of Pierre Taylor's declaration statements in paragraphs 15, 16, 17, and 18. (*See* ECF 145-2 at ¶¶ 15-18). These statements are also unsupported and must be disregarded. Again, nothing in Pierre Taylor's declaration states that he has personal knowledge about every single fire drill conducted across the different cell houses at ISP. The truth is, Pierre Taylor, as an inmate, cannot be at every single fire drill to be able to attest to when staff conduct the fire drills and how often the drills are conducted. Paragraphs 15, 16, and 17 are conclusory statements without proper documentary evidence, *Weaver*, 3 F.4th at 934 (stating a nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; but must go beyond the pleadings and support contentions with proper documentary evidence). (*See* ECF 145-2 at ¶¶ 15-17). There is also no factual support or foundation that Pierre Taylor would know what the proper number of fire drills are that should be conducted. As to paragraph 18, there is no factual support for what fire drill Plaintiff is referring to. (*See* ECF 145-2 at ¶ 18). Paragraphs 15-18 are self-serving statements without factual support that carry no weight on summary judgment. *Butts*, 387 F.3d at 925. For all these reasons, paragraph 24 of Pierre Taylor's declaration must also be disregarded. He provides no basis or personal knowledge for how he would know the staff response times to fire or how these unidentified "staff members have routinely compromised [the firefighters'] ability to be effective by delaying or prohibiting [their] ability to respond to fires". (*See* ECF 145-2 at ¶ 24). These are conclusory statements without factual support that must be stricken. *Weaver*, 3 F.4th at 934; *Butts*, 387 F.3d at 925.

Additionally, Pierre Taylor's statements in paragraphs 15, 16, and 17 must be stricken based on the sham affidavit rule. Plaintiff attempts to use Pierre Taylor's declaration to rebut Ms. Taylor's sworn testimony.

As Ms. Taylor attests, fire drills are conducted on a quarterly basis. (ECF 132-8 at ¶ 8). The fire drills are conducted during the day shift and night shift four times a quarter in every ISP housing unit. *Id.* During the fire drills, the housing units are evacuated, staff walk the unit until the cell house is empty. (*Id.* at ¶ 10). Even when Ms. Taylor does not participate in conducting the fire drills, she reviews the documentation for the fire drill. *Id.* at ¶ 9. Plaintiff's use of Pierre Taylor is clearly made to create a dispute of fact in order for Plaintiff to survive summary judgment. Thus, paragraphs 15, 16, and 17 must be stricken based on the sham affidavit rule.

As to Paragraph 19 in Pierre Taylor's declaration, offender Taylor states that prior to the 2023 fire, he and other fire fighters suggested to Defendants Neal, Buss, Taylor, Wardlow, and Becher but again there is no factual basis for when these alleged suggestions were made to these Defendants, how they were made, or in what context. *See* ECF 145-2 at ¶ 19. The last sentence in paragraph 19 of Pierre' Taylor declaration must also be stricken under the sham affidavit rule as it was clearly made to rebut Warden Neal's declaration and his sworn statements. As Warden Neal stated, at the time of the January 14, 2023 fire, ISP was in the process of implementing these additional fire extinguishers on the endcaps of the ranges and shortly after the January 14, 2023 fire, additional water and ABC fire extinguishers were placed on the end caps of the ranges. (ECF 132-7, Neal Decl. at ¶ 13). Thus, Pierre Taylor's statement in the last sentence of paragraph 19 must be disregarded under the sham affidavit rule. Plaintiff's statement about what other firefighters allegedly reported to Defendants Neal, Buss, Taylor, Wardlow, and Becher is inadmissible hearsay that must be disregarded as well, ECF 145-2 at ¶ 19. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

Part of Pierre Taylor's statement in paragraph 22 should be stricken as the statement is grounded on speculation. Pierre Taylor states, "If it were not for the open windows and doors and fans, ACH would have remained full of thick black smoke until it naturally dissipated." (ECF 145-2 at ¶ 22). Plaintiff's unsupported inferences "that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017), quoting *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Defendants also object to Plaintiff's characterization that the ACH was full of "thick black smoke" or "dense black smoke" as the evidence shows otherwise. (ECF 145-2 at ¶ 22 and 23) *cf.* (ECF 132-12) (images of ACH during the fire and after the fire was put out). The image screenshots from the surveillance footage shots of the fire and after the fire clearly rebut Pierre Taylor's statements made under oath. *See* ECF 132-12 (images showing that there was no such "thick black smoke" and that ACH was still visible). Thus, Pierre Taylor's false characterization of the smoke must be disregarded. Pierre Taylor's statement in paragraph 23 of his declaration that the air in ACH was "unsafe and unbreathable" is also not properly supported as the statement Pierre Taylor makes is one that he cannot make as a lay witness. Fed. R. Evid. 702. Pierre Taylor provides no factual basis that he tested the air or what makes him qualified to make such a statement.

Pierre Taylor then goes on make statements about the structure of the A Cell House ("AHU" or "ACH") that he speculates "pose a substantial risk of harm." In paragraph 25 of his declaration, Pierre Taylor speculates that the "lack of storage spaces and containers with lids pose a substantial risk of harm **in the event of a fire** because prisoners are forced to sit electronics on or next to open water sources (toilet/sink unit) and their property is not covered in any manner" (ECF 145-2 at ¶ 25) (emphasis added). Notably, Pierre Taylor does not state that the lack of storage spaces and containers with lid cause a fire because such a statement would be unreasonable. Pierre Taylor's statements are "flights of fancy [and] speculations… about matters remote from that experience." *Norfolk S. Ry. Co.*

*v. Glob. Tower, LLC*, 620 F. Supp. 3d 784, 793 (N.D. Ind. 2022) (quoting *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)). The amount of storage space and types of containers in the cells do not lead to a risk of fire. Pierre Taylor also states that "Mr. Neal, Ms. Buss, Ms. Taylor, Major Wardlow, Mr. Becher were expressly informed" (ECF 145-2 at ¶ 25) of this alleged risk by Pierre Taylor and other inmates. Statements from other inmates are inadmissible hearsay. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). But again, there is no factual basis by Pierre Taylor of when Defendants Neal, Buss, Taylor, Wardlow, and Becher were alleged "expressly informed" and what the contents of those alleged conversations were. Rather, Pierre Taylor's statements in paragraph 25 of his declaration are clearly an attempt to impute knowledge onto these defendants in an effort for Plaintiff to survive summary judgment. Again, the statement is made without personal knowledge as Pierre Taylor did not live in A Cell House and can have no personal knowledge about other inmates are doing in their cells.

Similarly, Pierre Taylor's statement about not having an emergency button in the cell posing "a substantial risk of fire ***in the event of a fire*** because prisoners have no way to timely alert" staff (ECF 145-2 at ¶ 26) is also not grounded on facts. In fact, when inmates want to get staff attention, they yell out for attention. (ECF 106 at 3). Pierre Taylor's statement that call buttons in the cells would help staff respond quicker to emergency situations is grounded in speculation without support with documentary evidence. *Weaver*, 3 F.4th at 934; *Butts*, 387 F.3d at 925. Pierre Taylor's statement is mere speculation and conjecture. *See Design Basics, LLC*, 858 F.3d at 1099. Plaintiff's inference that Mr. Devine and Mr. Smith died because ISP staff did not respond timely to the fire is all unsupported conjecture and speculation that has no support, (ECF 145-2 at ¶ 26). That statement must also be disregarded. *See Design Basics, LLC*, 858 F.3d at 1099; *Norfolk S. Ry. Co.*, 620 F. Supp. 3d at 793.

Notably, Pierre Taylor does not state that a cell not having a call button leads to fires because such a statement would be unreasonable. Pierre Taylor's statements are "flights of fancy [and]

speculations… about matters remote from that experience." *Norfolk S. Ry. Co.*, 620 F. Supp. 3d at 793. Pierre Taylor's statements that other firefighters have complained to "Mr. Neal, Ms. Buss, Ms. Taylor, and Major Wardlow" about timely responses to prisoners yelling for help, ECF 145-2 at ¶ 26), is inadmissible hearsay that must be disregarded. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Similarly, Pierre Taylor's statements that "ACH prisoners told [him] they were yelling and screaming for approximately 15 minutes before ACH staff members finally notice (sic) and responded to the Fire", (ECF 145-2 at ¶ 26), is inadmissible hearsay that must be disregarded on summary judgment. *Gunville*, 583 F.3d at 985. The same is true of the hearsay when Pierre Taylor states that "BCH prisoners told [him] a similarly (sic) story when Mr. Devine died in 2017." (ECF 145-2 at ¶ 26). Additional hearsay that must be disregarded is Pierre Taylor's statement that Defendants Neal, Buss, Taylor, Wardlow, and Becher were allegedly informed of there being no call buttons by inmate firefighters. *Id.* Plaintiff' statement that he relayed what ACH inmates were telling him is hearsay within hearsay that must also be stricken, *see id.* "Both levels of hearsay would have to be overcome for this evidence to be considered at summary judgment." *Lewis v. Cnty. of Cook*, No. 17-CV-08802, 2022 WL 4599265, at *7 (N.D. Ill. Sept. 30, 2022). Plaintiff cannot overcome either level of hearsay here about the 2017 fire and Pierre Taylor admits he only became aware of the 2017 fire through training materials and what he was told by other inmates. (ECF 145-2 at ¶ 26). The rule governing summary judgment requires that a supporting or opposing affidavit 'be made on personal knowledge', which Pierre Taylor admits he does not have here. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum*, LLC, 653 F. Supp. 2d 895, 915 (N.D. Ind. 2009) (quoting Fed R. Civ. P. 56(e)(1)). Pierre Taylor's own additions make clear he does not have any personal knowledge to make sworn statements about the 2017 fire, and thus, Pierre Taylor's statements about that fire must be disregarded. Fed. R. Civ. P. 56(c)(4).

Similarly, Pierre Taylor's statement the alleged layers of paint posing "a substantial risk of fire ***in the event of a fire*** because the layers of paint" somehow fuel the fire is also not grounded on facts. (ECF 145-2 at ¶ 27). Notably, Pierre Taylor does not state that the paint on the walls itself causes fire as such a statement would be unreasonable. *Norfolk S. Ry. Co.*, 620 F. Supp. 3d at 793 ("flights of fancy [and] speculations… about matters remote from that experience."). There is no evidence that Pierre Taylor states about paint on walls causing a fire. Pierre Taylor also states that "Mr. Neal, Ms. Buss, Ms. Taylor, Major Wardlow, Mr. Becher were expressly informed" (ECF 145-2 at ¶ 27) of this alleged risk by Pierre Taylor and other inmates. Statements from other inmates are inadmissible hearsay. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Pierre Taylor's statements about "the fire in Mr. Devine's cell [feeding] on the paint on the walls and consequently [growing] out of control" (ECF 145-2 at ¶ 27) is wholly unsupported and made without personal knowledge for the reasons cited in the preceding paragraph. *See* Fed. R. Civ. P. 55(c)(4); *Weaver*, 3 F.4th at 934; *Butts*, 387 F.3d at 925. Pierre Taylor is also not an expert in fire acceleration and cannot make these types of causation statements regarding the 2017 fire. This impermissible Rule 702 statement must be stricken.

Pierre Taylor makes yet another conclusory self-serving statement in attesting that unidentified ISP staff do not take fires or their "duty to protect [] prisoner[s] in the event of a fire" seriously. (ECF 145-2 at ¶ 28). Pierre Taylor cannot attest to the state of mind of ISP staff. Plaintiff goes on to say that on January 14, 2023, some unidentified staff "had no idea what to after being alerted to the Fire." (ECF 145-2 at ¶ 29). These statements are made without any personal knowledge or factual support in the record. *See* Fed. R. Civ. P. 55(c)(4); *Weaver*, 3 F.4th at 934; *Butts*, 387 F.3d at 925. Specifically, Pierre Taylor does not attest as what the shortcomings are, who the ACH staff he mentions were, or that he was even in AHU at the time that the record shows the Defendants in this case responded to the fire. Thus, Pierre Taylor's statements in paragraph 28 and 29 should be stricken.

In Paragraph 30 of Pierre Taylor's declaration, Peirre Taylor speculates Mr. Smith's life could have been saved with an electrical cell door, "adequate number of ABC extinguishers on the range, working smoke detectors, an emergency call button in the cells… or properly trained staff." (ECF 145-2 at ¶ 30). These are all serving statements made without any factual support. Pierre Taylor provides no personal knowledge for his speculative statements. Pierre Taylor does not reference what staff he is referring to, does not reference what training he believes those unidentified staff lacked or the basis for his belief, does not state the basis for him believing smoke detectors did not work, and does not acknowledge that ABC extinguishers were available in the cell house. Given the speculation, Pierre Taylor's statements must be disregarded. *Weaver*, 3 F.4th at 934 (A nonmoving party cannot rest upon conclusory statements in affidavit). Plaintiff's statements that ISP firefighters conveyed alleged shortcomings to Neal, Buss, Taylor, and Wardlow is all inadmissible hearsay. *Gunville*, 583 F.3d at 985. These statements in paragraph 30 of Pierre Taylor's declaration must be disregarded and stricken from consideration on summary judgment.

In paragraph 31 of the Perre Taylor's declaration. Pierre Taylor states that ISP staff would not take the tests seriously. (ECF 145-2 at ¶ 31). But this statement is based on pure speculation as Pierre Taylor cannot attest to what these unidentified staff thought of regarding the testing. *See Norfolk S. Ry. Co.*, 620 F. Supp. 3d at 793. Thus, this portion of paragraph 31 should be stricken. For these same reasons, Pierre Taylor's statement in paragraph 33 that unidentified ISP staff do not take fire safety questionnaires seriously should be stricken.

In paragraph 31 of Pierre Taylor's declaration, Pierre Taylor attests that "[m]any of the firefighters [were] afraid to speak out for fear of losing their position as a firefighter." (ECF 145-2 at ¶ 31). Mr. Taylor cannot speak or speculate as to what other inmates are thinking. *See Norfolk S. Ry. Co.*, 620 F. Supp. 3d at 793.

Pierre Taylor's paragraph 35 must be disregarded in its entirety. (ECF 145-2 at ¶ 35). Pierre Taylor attests that he has watched "numerous dorm rep meeting on the institutional channel and [has] heard prisoners raise concerns directly to Mr. Neal, Ms. Buss, Ms. Taylor, and Major Wardlow about the [alleged] lack of fire safety." (ECF 145-2 at ¶ 35). But the statements offender Pierre Tayler claims to have watched and heard from other inmates are inadmissible hearsay. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Outside of these hearsay statements, Plaintiff does not cite any other evidence to support his baseless contention. The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. University*, 870 F.3d 562 at 572−73; *see also* Fed. R. Civ. P. 56(c)(3); N.D. Ind. L.R. 56-1(e). "On a motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with Rule 56(e)." *Bitler Inv. Venture II, LLC*, 653 F. Supp. 2d at 915. Because the statements in paragraph 35 of Pierre Taylor's declaration are all inadmissible, paragraph 35 must be stricken.

The statements in paragraph 35 and 36 of Pierre Taylor's declaration must be stricken and disregarded as well. First, in paragraph 36, statements from what other firefighters allegedly spoke to Becher about are all inadmissible hearsay. *Gunville*, 583 F.3d at 985. Pierre Taylor's declaration just lists out many of alleged issues he believes exist, but this list does not reference any specific individual, does not provide any specifics or facts but entirely rests on his conclusions about what he believes are issues. (*See* ECF 145-2 at ¶ 35-36). For instance, Pierre Taylor cannot have personal knowledge of when staff conduct security checks from the simple reason that as a Plaintiff he cannot be on all ranges at once or know what he is going on outside of his own housing unit, Pierre Taylor cannot know that electronical outlets are allegedly sparking for the same reasons that he is an inmate and cannot know what is happening in cells across the facility. These statements are made without any personal knowledge or factual support in the record. *See* Fed. R. Civ. P. 55(c)(4); *Weaver*, 3 F.4th at 934; *Butts*,

387 F.3d at 925. "On a motion for summary judgment, a court must not consider parts of an affidavit that fail to comply with Rule 56(e)." *Bitler Inv. Venture II, LLC*, 653 F. Supp. 2d at 915.

Pierre Taylor's statement that "ISP does not have extinguishers on each range in every cell house" (ECF 145-2 at ¶ 36) is clearly made to rebut sworn testimony about the placement of fire extinguishers in the cell (ECF 132-7 ¶ 13). This also rebuts even Plaintiff's own testimony about fire extinguishers in ACH. (ECF 132-1 at 70). Pierre Taylor's statement here in attempt to rebut sworn testimony and made without personal knowledge of facts upon which he makes this conclusory statement must be stricken under the sham affidavit rule. For all the same reasons cited above, Plaintiff's statements about prisoners setting their electronics on the toilet/sink unit, about the smoke detectors allegedly not working properly, and statements about the fire drill and electronic doors must be disregarded, *see* supra (above).

Pierre Taylor's declaration statement in paragraph 37 must also be stricken. There is no basis as to what "fire safety and prevention program" Pierre Taylor is referring to or what state-level training he believes is not followed or even how Pierre Taylor has knowledge or the expertise to be able to judge state-level training. (ECF 145-2 at ¶ 37). Pierre Taylor does not identify what ACH custody staff he is referring to here or that he was aware of what these unidentified ACH staff did or did not know. The declaration does not identify the factual basis for Pierre Taylor's conclusory statement. *See* Fed. R. Civ. P. 55(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Here, Plaintiff cannot rely on Pierre Taylor's conclusory statements for support. *Weaver*, 3 F.4th at 934. Pierre Taylor's paragraph 37 must be stricken.

Paragraph 38 of Pierre Taylor's declaration must be disregarded under the sham affidavit rule. Once Officer Cross and Officer Crockett became aware of the fire alarm, they responded and Sgt.

Walton called the signal for a fire over the radio. (ECF 132-11, Crocket Decl at ¶ 11, 13). Pierre Taylor would have no personal knowledge about when the fire signal was called as there is no evidence that he was located in A Cell House at the time of the fire or when Sgt. Walton called the signal. *See* ECF 113-1 at 19. Personal knowledge may include reasonable inferences which are "grounded in observation or other first-hand personal experience." *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir.1991). Here, Pierre Taylor provides no personal knowledge and instead includes paragraph 38 in a clear attempt to rebut sworn testimony for Plaintiff to survive summary judgment.

Finally, Pierre Taylor's declaration contains a myriad of hearsay statements in paragraphs 41 and 42. (ECF 145-2 at ¶ 41-42.). These include

- "ISP staff on the scene also advised medical staff to wait by the door for their own safety – from the smoke." (*Id.* at ¶ 41).

- "It was later relayed to me that a few of the medical staff members, who were only waiting by the entry way, required breathing treatments; one nurse had to go to the hospital to be treated for smoke inhalation." *Id.*

- "[S]everal prisoners ran to get me saying they heard ACH prisoners yelling 'FIRE' while they were outside of ACH." (*Id.* at ¶ 42). This contains hearsay within hearsay.

- " . . . I heard ACH prisoners yelling 'FIRE' . . . " *Id.*

All of these hearsay statements must be disregarded as inadmissible. *Gunville*, 583 F.3d at 985.

For the reasons stated above, the above-referenced portions of Pierre Taylor's declaration must be stricken and not considered on summary judgment.

**C. Several of the Discovery documents Plaintiff relies on are inadmissible and must be disregarded on summary judgment.**

In Defendants' *Reply to their Statement of Material Facts and Response to Plaintiff's Statement of Additional Material Fact* (ECF 163), Defendants have attacked several pieces of evidence showing how Plaintiff has relied on several pieces of evidence. For the judicial economy, State Defendants do not

reiterate every single evidentiary challenge here but incorporate by reference evidentiary challenge as made within their pleading (ECF 163).

**1. Any reference to IDOC Policy and Administrative Procedure (AP) 00-00-101 should be disregarded under Rule 37.**

State Defendants highlight just a few of those challenges here. First, in his response brief, Plaintiff cites to IDOC Policy and Administrative Procedure ("AP") 00-00-101, Section XII, but any refence to that policy must be excluded (ECF 145-1 at 26). Under Rule 26(e), a party who has responded to a request for production must supplement its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A)." *Hunting Energy Servs., Inc. v. Kavadas*, No. 3:15-CV-228 JD, 2018 WL 4539818, at *6 (N.D. Ind. Sept. 20, 2018). Rule 37(c) authorizes sanctions if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). Plaintiff had the opportunity to supplement his discovery responses and disclosures but failed to produce these discovery responses from a different case. Accordingly, any reference to this IDOC policy must not be considered.

**2. References to inmate fire fighter reports (ECF 113-1 at 1-21) must be disregarded as they are and contain inadmissible hearsay.**

Second, State Defendants challenge Plaintiffs' reliance on the unsworn reports from other inmate firefighters as filed on the docket as part of the discovery in this case. *See* ECF 113-1 at 1-21. Any reference to these reports is inadmissible hearsay as they are reports from unsworn inmates. Throughout his brief and Statement of Additional Material Facts, Plaintiff refers to the reports of several inmate fire fighters, including those of inmates Alcantar (ECF 113-1 at 1), Daniel David Milne (ECF 113-1 at 4), and from inmate James Washington (ECF 113-1 at 10). They also include reports from inmates William Andrews, Christopher Pitcock, Danny Means, Matthew Stidham, James Applewhite, Scott P. Andrews, Joseph Borgia, Kelly Holland, Matthew Richarson, Michael Dowdell,

and Tyler White. (ECF 113-1 at 2, 3, 5, 6, 9, 12, 13, 14 15, 21), These inmate statements are inadmissible hearsay and may not be used to survive summary judgment. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

Even within these inmate reports, there is hearsay within hearsay. For example, Milne states that he spoke with inmates on the range who allegedly told him that staff took 15-20 minutes to respond. ECF 113-1 at 4. Offender Milne also makes additional inadmissible hearsay statements in stating in his report, "the [unnamed] officers told me they didn't have a key." (ECF 113-1 at 4). Offender Milne states that he asked some unknown officer "in ACH to turn off the power to the cell. It should have been done immediately but wasn't. They told me that they didn't no (sic) how to do this. Then they told me that they were told not to do the de-energizing. I asked by whom, they wouldn't say." ECF 113-1 at 4. These statements are riddled with hearsay and hearsay within hearsay; all of which is inadmissible. Fed. R. Evid. 802.

Inmate Washington also references that he heard other nonparty inmates told him in took 10-15 inmates before the fire department had been called. ECF 113-1 at 10. Similarly, inmate Richardson also references that he heard statements from other inmates in AHU about yelling for over 10 minutes. ECF 113-1 at 14. These other nonparty inmate statements are hearsay within hearsay that Plaintiff cannot overcome. Fed. Rule Evid. 802. "Both levels of hearsay would have to be overcome for this evidence to be considered at summary judgment." *Lewis v. Cnty. of Cook*, No. 17-CV-08802, 2022 WL 4599265, at *7 (N.D. Ill. Sept. 30, 2022). Plaintiff cannot overcome the hearsay within hearsay.

For these reasons, Plaintiff may not rely on a myriad of hearsay within the inmate fire fighter reports as contained within ECF 113-1 at 1-21. None of those unsworn inmate fire fighter statements cannot be considered on summary judgment. Plaintiff has no excuse or justification for why he was able to get Pierre Taylor to sign one, but not other inmate fire fighters.

**3. Several IDOC Incident Reports also contain hearsay and cannot be considered on summary judgment.**

Next, several IDOC incident reports filed as discovery also cannot be considered as they contain inadmissible hearsay. Those are the incident reports at ECF 115-1 at 1, 12, 20, 40, 70, 72, 73 as they were written by nonparty IDOC staff. *Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Additionally pages 1, 70, 72, and 73 contain hearsay within hearsay reporting what other officers reported and is inadmissible. Plaintiff cannot overcome the hearsay within hearsay in the reports at ECF 115-1 at 1, 70, 72, 73. *Lewis*, 2022 WL 4599265, at *7 (stating that both levels of hearsay have to be overcome to be considered on summary judgment). For instance, Plaintiff cites to an incident report from the ISP Fire Brigade Chief See ECF 115-1 at 1. The incident report at ECF 115-70 references statements by Office Milligan to Captain Gillepsie, who was the author of that incident report. *See* ECF 115-70. The same is true for the incident reports at ECF 115-72 and 73. *See* ECF 115-72 and 115-73. All of these incident reports contain inadmissible hearsay and cannot be considered on summary judgment.

4. **Third party reports cannot be considered on summary judgment.**

Finally, Plaintiff relies on third party reports that have not been authenticated and also cannot be considered. In evaluating a summary judgment motion, the court may consider as evidence properly authenticated and admissible documents or exhibits. *Scott v. Edinburg*, 346 F.3d 752, 760 n. 7 (7th Cir. 2003); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2001). For example, in Plaintiff's Additional Statement of Material Facts, Plaintiff relies on reports from Ryan Protection Inc. (ECF 113-2 at 128-132), from Shambaugh & Son, L.P (ECF 113-1 at 209-249). These reports are not authenticated. Fed. R. Evid. 901; *Woods*, 234 F.3d at 989. ("unauthenticated documents generally cannot be considered on a motion for summary judgment"). There is no affidavit from the author or custodian of the documents concerning their authenticity; accordingly, the documents are not admissible. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006); *Scott*, 346 F.3d at 760 n. 7. These third-party records cannot be considered are inadmissible on summary judgment.

## II. State Defendants are entitled to summary judgment on all claims.

As shown throughout his reply, Plaintiff attempts to survive summary judgment by making myriad of misrepresentations of the record and stating mere conclusory and unsupported statements instead of relying on properly supported facts. In short, Plaintiff failed to create a dispute of fact that would preclude the Court from granting summary judgment in favor of State Defendants on all claims.

### A. Plaintiff's Eighth Amendment claims against Custody Defendant fail.

Plaintiff cannot establish Eighth Amendment deliberate indifference claims against Defendants Cross, Smith, Crockett, Walton, Koen, and Mayes for several reasons. The Eighth Amendment "protects' prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This creates a two-prong standard for inmates seeking to bring claims of deliberate indifference: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk of the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (quoting *Collins v. Seeman*, 462, F.3d 757, 760 (7th Cir. 2006)). "[D]eliberate indifference entails something more than mere negligence." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021).[3]

Plaintiff's Eighth Amendment deliberate indifference claims against Custody Defendants fail. First, Plaintiff has failed to provide any evidence that shows Plaintiff had an objectively serious medical need. Additionally, there is no evidence that any Custody Defendant was deliberately different to a

---

[3] Plaintiff appears to misunderstand the deliberate indifferent standard when he says that the "Eighth Amendment claims must be evaluated in light of 'society's expectations'" (ECF 147-1 at 13). Plaintiff cites to *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the only quotation to "society's expectations" in that opinion related to the language stating: "In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. *Id.* Here, there is no Eighth Amendment excessive force claim.

serious medical need from Plaintiff. Moreover, Custody Defendants are entitled to qualified immunity. Therefore, the Custody Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims against them.[4]

**1. Plaintiff did not have an "objectively serious" medical need.**

As an initial matter, State Defendants must make clear what sole claims are proceeding against the Custody Defendants, as Plaintiff seems to misunderstand the issue. As it relates to the Custody Defendants, Plaintiff's only claim here is an Eighth Amendment deliberate indifference to medical need claim. [ECF 11 at 8-9]. As it relates to the Eighth Amendment deliberate indifference to medical needs claim against the Custody Defendants, the issue is *not* the conditions of the fire in A Cell House or the response to the fire. To be clear, the Court's screening order expressly stated that Plaintiff's allegations related to the response to the January 2023 fire failed to state a claim, and the Court did not allow Plaintiff to proceed with such a claim against any State Defendant. [*See* ECF 11 at 4-7]. Plaintiff attempts to conflate his Eighth Amendment medical needs claims with what appears to be an Eighth Amendment claim on the theory that the fire and smoke posed a substantial threat of harm. [*See* ECF 145-1 at 12, 16]. There is no claim here for the response to the fire or Plaintiff's perceived issues with the custody staff's response to the fire.[5] Plaintiff is not proceeding on any other theory of

[4] In his response brief, Plaintiff relies on *United States v. Thomas* in asserting that his grievance and complaint are more accurate than his deposition testimony, as the prior was generated closer in time to the fire. [ECF 145-1 at 4] (citing *United States v. Thomas*, No. 20 CR 489, 2021 WL 4355362 (N.D. Ill. Sept. 24, 2021) at *4. Plaintiff's reliance on *Thomas* is misplaced. In *Thomas*, the Court compared video evidence of the incident in question to testimony provided by police officers in cross-examination to determine whether evidence discovered during a traffic stop should be suppressed. There, the Court did not draw a conclusion that evidence generated closer in time to the event must always be "more accurate" than that of deposition testimony. Rather, the *Thomas* Court merely acknowledged that video evidence of a specific incident occurring is incredibly compelling. No such evidence is in question here. Accordingly, Plaintiff cannot utilize *Thomas* in an attempt to make his grievance and complaint more compelling than his deposition solely because they were completed closer in time to the incident. Notably, Plaintiff did not designate any grievances as evidence in his summary judgment response and does not cite to anything in his complaint either. A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

[5] Plaintiff makes several unsupported statements regarding the security checks, Fire Policy and Emergency evacuation procedures knowledge, and fire extinguishers – all of which contain no citation and are unsupported. [ECF 145-1 at 16].

liability under the Eighth Amendment as it relates to the Custody Defendants. The Eighth Amendment claim against the Custody Defendants is narrowed to an Eighth Amendment claim for allegedly denying Plaintiff medical care for injuries he claimed to suffer in the January 2023 fire. [ECF 11 at 11-12].

Additionally, State Defendants clarify a few of Plaintiff's contentions in this section of the response brief. First, Plaintiff asserts that the "smoke was so dense it would have been dangerous for [medical staff] to be [in A Cell House]" and that was the reason medical staff were not called right away in A Cell House (ACH). [ECF 145-1 at 12]. This statement is unsupported. As noted above, *supra*, Section I.B, Plaintiff's citation to Paragraph 41 in Offender Taylor's declaration is grounded on inadmissible hearsay and cannot be considered on summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Plaintiff's citation to the inmate firefighter (at ECF 145-1 at 12, 14) must also be disregarded as it is likewise hearsay as explained above. *See supra*, Section I.C(2). Plaintiff's reference about a nurse receiving treatment for smoke inhalation does not support his contention either because there is no evidence about the circumstances of how the nurse sustained her injuries, how much smoke she inhaled (as compared to Plaintiff), that the smoke inhalation was just "mild" (as Plaintiff contends), or the specific nature of how the smoke inhalation occurred. (*See* ECF 96-1 at 138). Plaintiff's unsupported contentions must all be disregarded. *Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

Plaintiff also makes several more unsupported statements. Plaintiff asserts that he was exposed to monoxide gas poisoning and that the Custody Defendants were aware that he "suffered severe exposure to 'thick black smoke' (i.e. carbon monoxide) for approximately twenty minutes." [ECF 147-

---

All of these unsupported statements about Defendants not removing him from his cell are unsupported but also not relevant to the medical indifference claim.

5 at 13]. However, there is no evidence of Plaintiff's hyperbolic allegation that the smoke had "carbon monoxide." This baseless accusation must be disregarded as unsupported. *Klein*, 2025 WL 33535, at *2. Plaintiff also fails to cite to any evidence in the record – because he cannot – that any of the State Defendants knew of him actually inhaling smoke and if so, for how long. These additional baseless allegations must be disregarded. *Id.*

Additionally, Plaintiff claims that ACH was filled with "thick dark smoke," but the undisputed evidence shows that, contrary to Plaintiff's assertions, there was no "dark smoke" that "reduced visibility to maybe 7 feet." [ECF 145-1 at 13-14] *Cf.* [ECF 132-12 (images of the smoke coming from the North side of ACH)].[6]

Furthermore, Plaintiff makes several statements that fall under the realm of Rule 702 expert testimony, which Plaintiff is not qualified to make, and for which there is no admissible or expert testimony. Plaintiff alleges that he "now regularly suffer[s] from spouts of shortness of breath" and his sinuses and chest now sporadically hurt when he breathes." [ECF 145-1 at 13]. Plaintiff alleges that he allegedly did not have these issues prior to the January 2023 fire and that he now suffers long term complications. *Id.* However, there is no admissible evidence to support these statements. Plaintiff only cites to page 106 in his deposition transcript which does not support his statements. (*See* ECF 145-1 at 13 citing ECF 132-1 at 106 (discussing the process of submitting health care request forms)]. Contrary to Plaintiff's assertions in his brief, Plaintiff's sworn deposition testimony shows Plaintiff testified that that he had breathing problems during COVID and while he experienced some breathing problems after the fire, he does not attribute those symptoms as worse because of the fire. *See* ECF 132-1 at 68:21-25. Plaintiff's unsupported statements must be disregarded. *Klein*, 2025 WL 33535, at *2.

---

[6] In describing the smoke, Plaintiff relies on several inmate fire firefighter written statements (*see* ECF 145-1 at 14), which are all inadmissible hearsay as explained above. *See supra*, Section I.C(2) (explaining why the unsworn statements from the inmate firefighter Plaintiff relies on are inadmissible).

Plaintiff, a lay person, is not competent to offer testimony regarding any proposed medical condition, causation, diagnosis, or prognosis. Fed. R. Evid. 701, 702; *United States v. Cravens*, 275 F.3d 614 (7th Cir. 2001) ("Although a lay person may readily observe a health problem, the causation of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision); *Stewart v. Jackson*, 2021 WL 1660976, at *8 (N.D. Ind. Apr. 28, 2021) ("[n]either [plaintiff] nor any lay witness will be permitted to offer opinions regarding medical diagnoses or causation.")]. Plaintiff's argument that the fire somehow caused him regular breathing issues or that he now suffers "long-term complications as proximate case of the fire" is not only unsupported but also impermissible Rule 702 testimony that must be disregarded.

Plaintiff misunderstands State Defendants' argument regarding an "objectively serious" medical need. Plaintiff attempts to make a distinction that *Henderson* and *Oliver* mainly regard secondhand smoke from Environmental Tobacco Smoke ("ETS"). [ECF at 145-1 at 14-15]. However, the cause of the smoke in ACH is not at issue here for Plaintiff's Eighth Amendment deliberate indifference to medical need claim against Custody Defendants. Rather, the inquiry is whether Plaintiff experienced an "objective serious injury or medical need."

The Plaintiff in *Hecke v. Beck* made an identical argument to Plaintiff's argument here. 2026 WL 507329 (N.D. Ind. Feb. 24, 2026), at *2. In *Hecke*, the plaintiff experienced "breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy" from secondhand smoke caused by a prison fire. *Id.* The *Hecke* Court held that while "the harm from inhaling smoke from jail fires could potentially outweigh the harm from inhaling cigarette smoke . . . . the injuries actually alleged. . . . [were] insufficiently serious to state a constitutional violation." *Id.* Accordingly, it does not matter whether the secondhand smoke resulted from ETS or a prison fire. Rather, it matters whether Plaintiff's injuries were objectively serious enough to sustain a constitutional violation and whether Custody Defendants were deliberately indifferent towards Plaintiff's medical needs.

Plaintiff cites his medical symptoms as "los[ing] consciousness," and allegedly continuing "to float in and out of consciousness", "coughing up soot," "violently vomiting," "severe eye, chest, nasal, and throat pains," and "difficulty breathing,". [ECF 145-1 at 12-13]. For clarity, what Mr. Griffin actually testified to was that he was only briefly unconscious and not for more than five minutes. [ECF 132-1 at 39:17-20]. At no point did Plaintiff ever testify to "coughing up soot" either. *See* ECF 132-1 at pp. 37-39, 45 (Plaintiff testifying to his symptoms).

However, the Seventh Circuit has held that health issues caused by secondhand smoke, such as breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy are "objectively speaking, relatively minor," and do not constitute an objectively serious injury or medical need. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (citing *Oliver v. Deen*, 77 F.3d 156, 160-161 (7th Cir. 1996). In *Henderson*, an inmate experienced health issues due to second-hand smoke inhalation. 196 F.3d at 846. There, the Court stated that the injuries caused by secondhand smoke, such as breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy were "objectively speaking, relatively minor" and did not constitute an objectively serious injury or medical need. *Id.*

In *Oliver*, the plaintiff had mild asthma and experienced symptoms of difficulty breathing, chest pains, wheezing, and other common symptoms of an asthma attack from ETS. *Oliver*, 77 F.3d at 158. There, the court held that his symptoms did not give rise to Eighth Amendment liability. *Id.* at 160. As mentioned above, in *Hecke*, the court held that "breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy" caused by secondhand smoke from a prison fire were not an objectively serious medical need amounting to an Eighth Amendment violation. No. 1:23-CV-286-GSL-ALT, 2026 WL 507329 (N.D. Ind. Feb. 24, 2026), at *2. Relying on the relevant case law, Plaintiff cannot show that "severe eye, chest, nasal, and throat pains," or "difficulty breathing" associated with the smoke inhalation rise to an "objectively serious" medical need. [ECF 145-1 at 12]. Plaintiff cannot

establish the objective prong of the deliberate indifference standard because he cannot show that he had an objectively serious medical need or injury.

In his attempt to show otherwise, Plaintiff relies on the *Sibley* Court's decision in showing that these symptoms rise to an "objectively serious" medical need. [ECF 145-1 at 13 (citing *Sibley v. Dart*, 435 F.Supp 3d 920 (N.D. Ill. Mar. 18, 2020))]. However, in *Sibley*, the court determined that the plaintiff's symptoms established an objectively serious medical condition because the plaintiff suffered from severe asthma, informed the prison officials of his asthma, asked for immediate medical attention, and experienced light-headedness, dizziness, vomiting, trouble breathing, and loss of consciousness. *Id.* at 930-931. In *Sibley*, the fact that prison officials knew that the plaintiff was experiencing a severe medical emergency and actively refused to assist him for two-hours weighed heavily in determining that there was an Eighth Amendment violation. *Id.* at 931. The facts of *Sibley* are entirely different than this matter, as that plaintiff suffered from severe asthma, experienced an asthma attack, requested help, and was ignored. Here, there is no admissible or proper evidence in the record that Plaintiff suffered from asthma or some other respiratory condition that could have been exacerbated by the fire. As noted above, Plaintiff's attempt to diagnose himself without any medical testimony or evidence to avoid summary judgment is meritless.

Plaintiff has also relied upon a decision in the Southern District of Illinois. (ECF 145-1 at 13 (citing *Cervantes v. Porter*, No. 23:cv-2176-RJD, 2025 WL 305458 (S.D. Ill. Jan. 27, 2025)). However, Plaintiff's reliance on *Cervantes* is misplaced. There, a prison official's use of excessive force left an inmate injured and unconscious, and the official refused to assist the inmate in seeking medical care. *Id.* at 2-3. The *Cervantes* Court did not determine that losing consciousness always rises to an objectively serious medical need, but instead, placed weight on the fact that a prison official caused the inmate to lose consciousness, and then refused to provide the inmate with medical care. *Id.* No such facts exist here.

Additionally, Plaintiff relies on *Jones* and *Walker*; however, neither case supports Plaintiff's arguments. [ECF 145-1 at 12]. In *Jones*, the plaintiff was in a prison cell during a fire and claimed to have inhaled dangerous amounts of smoke. *Jones v. Mitchell*, 1994 WL 517202 (N.D. Ill. Sept. 20, 1994), at *5. Plaintiff correctly provides a quote from *Jones* but fails to provide the full sentence and context. There, the court stated that "[a]lthough smoke inhalation could be a serious medical need, Jones' conduct suggests that he was not really suffering from it." *Id.* at *5. While Jones did experience some smoke inhalation, he saw multiple medical professionals in the time following the fire and failed to report severe symptoms of smoke inhalation, causing the Court to doubt whether he had a serious medical need. *Id.* Unlike in *Jones*, Plaintiff Griffin has provided no evidence that he "saw multiple medical professionals" after the fire regarding his alleged breathing issues. In fact, Griffin admitted that after the fire, he did not submit any health care request forms. [ECF 132-1 at 64:25 – 65:2]. Mr. Griffin further admitted that he did not see medical after January 14, 2023 for any of the symptoms he allegedly experienced the day of the fire. [Id. at 66:13-1. This infers that Mr. Griffin's symptoms were not serious at all. Especially since Griffin admits after the A Cell House lock down, his symptoms went away, ECF 132-1 at 102:5-9, and since Mr. Griffin chose to request medical need for other preexisting issues he had been seen for prior to the January 14, 2023 fire, *id.* at 66:19 – 67:20, 68:1-10.

In *Walker*, inmates set a series of fires in their cells and prison staff allowed these fires to burn without ordering an evacuation. *West v. Walker*, 2007 WL 2608789 (N.D. Ill. Sept. 4, 2007), at * 2. The plaintiff experienced nausea, headaches, difficulty breathing, burning in his esophagus, and pain in his lungs. *Id.* There, the court allowed the Eighth Amendment claim to proceed, not because it was shown that the plaintiff definitely suffered an objectively serious medical need, but rather, because the standard in a motion to dismiss generally favors the plaintiff and there was not enough evidence to show that plaintiff could prove "no set of facts" establishing his entitlement to relief. *Id.* at 6. *Walker* was in an entirely different procedural posture than the present matter. Here, the standard in summary

judgment differs from that applied in *Walker*. Unlike at the motion to dismiss stage, at summary judgment, the court must consider discoverable evidence in determining whether a genuine issue as to any material fact exists. Fed. R. Civ. P. 56. Unlike in *Walker*, the Court here has the benefit of evaluating the entire factual record to make the determination that Plaintiff's symptoms did not amount to a serious medical condition.

Plaintiff argues that it is unreasonable for ISP staff to receive medical attention "but not be subjectively aware that prisoners. . . . did not similarly need medical attention." [ECF 145-1 at 16]. There is no evidence of the injuries sustained by other staff or other inmates here. Therefore, Plaintiff cannot draw any meaningful comparison. Plaintiff also references welfare checks, but this is immaterial to the objective prong analysis for the deliberate indifference standard. Thus, Plaintiff's reliance on *Jenkins v. Bass*, No. 3:23-CV-783, 2025 WL 1916106 (N.D. Ind. July 10, 2025) for the proportion of conducting welfare checks after the fire) is immaterial. (*See* ECF 145-1 at 16). Any assertion that Plaintiff's injuries must have been objectively serious simply because other individuals received medical attention fails.

Plaintiff also makes the argument that "[a]alternatively, *even if* Incident Defendants *were not specifically or individually made aware* of my serious medical need, they were generally aware that I required medical attention for a serious medical need, i.e., carbon monoxide inhalation" from allegedly being exposed to the smoke for "approximately twenty minutes." (ECF 145-1 at 19) (emphasis added). But again, there is no evidence that the smoke from the fire had carbon monoxide, there is no evidence regarding the amount of smoke, Plaintiff inhaled, there is no evidence that the Defendants were aware that Plaintiff inhaled smoke, and even if so, how much smoke. Plaintiff's unsupported contentions must be disregarded. *See Klein*, 2025 WL 33535, at *2.

Plaintiff statement argument, as phrased, implies that not even he knows that Defendants were aware of any medical need or injuries he may have experienced. Plaintiff goes on to discuss *Bunch v.*

*State*, 964 N.E.2d 274, 280 (Ind. Ct. App. 2012) – a state court case that has no binding authority here – and misconstrues the text of that case. [ECF 145-1 at 19]. Plaintiff cites language from *Bunch* about "a carbon monoxide saturation reading of eight percent," which is a quotation from the *Bunch* opinion referring to testimony from a forensic pathologist who testified as to a specific victim's autopsy. *Bunch*, 964 N.E.2d at 280. Plaintiff relies on quotations from the *Bunch* opinion discussing additional expert testimony, particularly testimony from Jamie McAllister, a fire investigator, and language from the National Fire Protection Association 921 Guide for Fire and Explosion Investigations (2001). [*See* ECF 145-1 at 19 (citing *Bunch*, 964 N.E.2d at 286-87 & n.5)]. The circumstances of the felony murder in *Bunch* are not the same as they are here. Plaintiff cannot cherry-pick references to expert testimony from the trial record in *Bunch* and use it as Fed. R. Evid. 702 arguments here. Plaintiff has not designated any expert testimony and as a lay person, he does not have any scientific knowledge to be able to attest to whether there was any carbon monoxide in the smoke from the January 14, 2023, fire and, if so, what those levels were. Fed. R. Evid. 702. Neither can Plaintiff testify to, nor is there any evidence of, the amount of alleged carbon monoxide that entered Plaintiff's own bloodstream. Plaintiff's impermissible Rule 702 testimony must be disregarded here.

The undisputed record in this case shows that Plaintiff did not experience an "objectively serious" medical need on January 14, 2023. Plaintiff's failure to establish the objective prong of the deliberate indifference standard is fatal to his Eighth Amendment claims against the Custody Defendants. Accordingly, Custody Defendants are entitled to summary judgment.

**2. There is no evidence that Custody Defendants were deliberately indifferent.**

Even if Plaintiff could demonstrate he had an "objectively serious" medical need on January 14, 2023 (which he cannot), the record clearly demonstrates that Custody Defendants' actions do not constitute deliberate indifference

The subjective component of a deliberate indifference claim requires that the prison official knew of "an excessive risk to inmate health or safety" and disregarded the risk-that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. at 837. In the case of medical needs, the official must have "subjective awareness" of the serious medical need and then act with indifference to that need. *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004). The "type of evidence that can support an inference of deliberate indifference is an inexplicable delay in treatment which serves no penological interest." *Petties v. Carter*, 836 F.3d at 730.

In his response brief, Plaintiff has relied on a series of cases that do not refer to Eighth Amendment deliberate indifference. [*See* ECF 145-1 at 17-18]. This illustrates that Plaintiff has a fundamental misunderstanding of the subjective prong for the deliberate indifferent standard. First, Plaintiff relies on *Morissette* to show that intent must always be determined by a jury. [ECF 145-1 at 17], *see Morissette v. United States*, 342 U.S. 246, 274 (1952). However, when the *Morissette* Court made this statement, it was made in regard to criminal intent when a defendant is charged with a crime, not intent under the Eighth Amendment deliberate indifference standard. *See* 342 U.S. at 274. Plaintiff's main argument is that intent is a matter to be determined by the jury and is not suitable for summary judgment. [ECF 147-1 at 17-18]. For this purpose, Plaintiff has relied upon a series of cases. In *Lac du Flambeau Band of Lake Superior Chippewa Indians*, the court held that disputed issues of material fact preclude summary judgment. *See* 599 U.S. 382, 385 (2023). There, the issue was whether protestors acted with discriminatory intent towards the Chippewa Indian Tribe in blocking them from fishing. *Id*. Similarly, the *P.H. Glatfelter* case held that with the specific circumstances, the matter of fraudulent intent under the claim of fraudulent misrepresentation was not properly suited for summary judgment. *P.H. Glatfelter v. Voith*, 784 F.2d 770, 774 (7th Cir. 1986). In *Lorillard Tobacco Co.*, the court held that the issue of the defendant's intent in selling counterfeit cigarettes under the Lanham Act was an issue

for a jury to determine. *Lorillard Tobacco Co., v. A & E Oil, Inc.*, 503 F.3d 588, 589-590 (7th Cir. 2007).[7] None of these cases dealt with an Eighth Amendment deliberate indifference claim. Thus, Plaintiff's reliance on these cases is misplaced. Additionally, Plaintiff cites *Knighten* and *Reed* case law regarding the scope of employment, which is also irrelevant to the Eighth Amendment standard. [ECF 145-1 at 17].[8]

Regardless, the undisputed evidence shows that none of the Custody Defendants' actions constitute deliberate indifference under the Eighth Amendment. There is no evidence that any of the Custody Defendants knew what cell Griffin was in relative to Mr. Smith's cell. There is no evidence that any of the Defendants knew how much smoke, if any, had entered Plaintiff's cell or how much smoke, if any, Plaintiff had inhaled. Plaintiff argues that he requested medical care both before and after the 3:30 pm fire signal (10-71) was resolved.[9] (ECF 145-1 at 18). This is a blatant misrepresentation of the record. First, Plaintiff admits that from the time that he was in his cell to the time he was evacuated as part of the AHU evacuation, he did not speak with Officer Cross, Officer Crockett, Sergeant Walton, Lt. Smith-Robinson. [Ex. A at 40:8-22, 41:22 – 42:22]. There is no evidence that Plaintiff spoke with any Custody defendants prior to his evacuation from the cell house. Thus, there is no evidence that any custody defendant could have known of Plaintiff's symptoms from the smoke or any alleged injuries prior to the evacuation.

---

[7] Notably, *Lorillard Tobacco Co.* was overruled by *McCarter*. *McCarter v. Retirement Plan For Dist. Manager of American Family Ins. Group*, 540 F.3d 649 (7th Cir. 2008). Two cases cited by Plaintiff are cases from the Indiana Supreme Court and the Indiana Court of Appeals, and thus, are not controlling authority in this matter. *See Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 794 (Ind. 2015); *see also Reed v. White*, 103 N.E.3d 657, 660 (Ind. Ct. App. 2018).

[8] *Knighten* is a case from the Indiana Supreme Court and considers a claim of negligence. *Knighten v. East Chicago Housing Authority*, 45 N.E.3d 788 (Ind. 2015). *Reed* is from the Indiana Court of Appeals and also considers a tort claim. *Reed v. White*, 103 N.E.3d 657 (Ind. Ct. App. 2018). Neither matter is controlling. Additionally, neither matter supports Plaintiff's argument.

[9] The Signal 3000 is a signal for medical emergency, which was called due to the condition of Mr. Michael Smith. (See ECF 113-1 at 131). The incident report references the evacuation of AHU due to the smoke and that EMS arrived on the grounds for Mr. Smith. *Id.* The signal for the fire (10-71) was cleared at 3:30. *See id.*

Plaintiff claims he "expressly told each individual incident Defendant that [he] had lost consciousness, had difficulty breathing, was experiencing severe pain and burning sensations in [his] eyes, nasal cavity, throat, and chest, and was violently vomiting" (ECF 145-1 at 19). Plaintiff attempts to rely on his complaint, which was filed prior to him giving sworn deposition testimony and prior to the factual record being developed. (*See id.*). This is troubling for one of two reasons. **Either Griffin lied under oath at his deposition (and committed perjury)**[10] OR **Griffin has submitted blatant lies to the Court in at least 2 pleadings (the complaint and summary judgment response brief) in violation of Rule 11 (warranting sanctions against Griffin)**. Plaintiff cannot get around the fact that he has committed some kind of misconduct here. What is clearly apparent is that Plaintiff now tries to completely disregard his own deposition testimony to try to get around summary judgment. Under the sham affidavit rule, Plaintiff cannot use his complaint as a declaration to get around his deposition testimony. *See, e.g.*, *Hart v. Brown*, 2:19-cv-00020-JRS-DLP, 2020 WL 3078120, at *2 (S.D. Ind. June 10, 2020) ("The Court disregards under the sham-affidavit rule any sworn statement by [plaintiff] in his complaint or summary judgment memorandum that contradicts his deposition testimony.") (citing *James v. Hale*, 959 F.3d 307 (7th Cir. 2020) (discussing and applying sham-affidavit rule)). Defendants properly relied on Plaintiff's own sworn testimony on summary judgment and Plaintiff cannot ignore his own sworn statements and admissions now.

The evidence shows that Plaintiff never communicated directly with any of the custody defendants on January 14, 2023 regarding any injuries, symptoms, or ailments from the smoke. Mr. Griffin testified that as he was evacuating AHU, he communicated that he believed he passed out, that he was lightheaded, was dealing with shortness of breath, and that he needed medical attention when he was outside and while defendants Cross, Crockett, Smith, Walton, and maybe Koen in the vicinity were in the vicinity. [Id. at pp. 51-53]. ***However, Mr. Griffin admits that he does not know***

[10] Given the inconsistencies between his complaint and deposition testimony.

***who he was actually talking to at the time.*** *Id.* at 53:13-24 (Griffin testifying "**I would be misleading you if I said that I knew exactly who I was talking to at the time**.") (emphasized added)]. Mr. Griffin further testified, "**I'm not going to say that they looked at me and say: All right. We're going to get you, because nobody did that**. But I'd like to believe that they heard me because it wasn't like I was a mile away. [*Id.* at 57:2-7 (emphasis added)]. By his own admissions, Mr. Griffin is not sure if the defendants heard him. [*Id.* at 57:8-10]. The law won't permit juries to speculate. *See McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003). In fact, there is no evidence that any of the Custody Defendants actually did hear Plaintiff such that they would have been aware of his alleged ailments and symptoms.

But even if any the custody Defendants had heard Plaintiff – there is no evidence that they did – the Custody Defendants had a legitimate penological interest in ensuring all the inmates in A Cell House were evacuated for their safety given the fire. As one can imagine, this was a chaotic scene with several inmates exiting the cell house at the same time, lots of staff members and inmates outside of the cell house, other individuals talking at the same time, and lots of other activity outside of AHU as the facility was assessing this situation. [ECF 132-1 at p. 54]. Thuse, there was a penological reason to ensure the inmates got to the reactions first immediately after the evacuation. *See Petties,* 836 F.3d 722. Based on these circumstances, no reasonable jury could conclude that any Custody Defendant exhibited a "total unconcern" for Plaintiff's welfare by denying him medical care. *See Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) ("[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'").

Once Plaintiff was waiting in the recreation building, Mr. Griffin states that he spoke with Ms. Mayes that he was feeling lightheaded, had shortness of breath, and needed help. [*Id.* at 58:4-13]. In response, Ms. Mayes allegedly said, "We counting currently." [*Id.* at 58:13-20]. This was the only

conversation Mr. Griffin had with Mayes at the recreation building. [*Id.* at 58:21 – 59:7]. This is insufficient to establish deliberate indifference against Ms. Mayes. Ms. Mayes was assisting accounting for the inmates who had been evacuated and waiting in AHU, while the cell house was cleared and before the inmates could safely return to the cell house. It cannot be said that Ms. Mayes delayed Plaintiff medical care in this situation given the ongoing situation related to the fire. *See Petties*, 836 F.3d at 730. Besides Ms. Mayes, Mr. Griffin admits that he did not speak to anyone else while he was in the gym/recreation. [ECF 132-1 at 59:8-10]. Thuse, there is no basis to hold any of the other Custody Defendants liable for actions or inactions taken while Plaintiff was at recreation/gym following the evacuation.

There is no evidence that Mr. Griffin was among the inmates who were visibly in need to medical care or experiencing a medical emergency. Once the inmates who requested medical attention but did not appear to be suffering from a medical emergency would have been secured back into their cells before staff could get them medical treatment from the medical staff. [ECF 132-5 at ¶ 21]. In fact, once inmates returned to A Cell House, Lt. Smith-Robinson spoke with the inmates and relayed to medical staff which inmates requested assistance from medical. [ECF 132-4 at ¶ 18]. Mr. Griffin was not one of those inmates who requested medical attention after returning to AHU. Mr. Griffin admits that he did not even submit any health care request forms either. [*Id.* at 64:25 – 65:2]. Once Mr. Griffin returned to his cell, Mr. Griffin admits he did not have any other conversations with Officer Cross, Officer Crockett, Sgt. Walton, Lt. Smith-Robinonson, Lt. Koen, or Ms. Mayes [ECF 132-1 at 62:14-25, 63:1-4, 71:19 – 72:18]. Thus, after Griffin returned to his cell, there is also no evidence that any of the Custody Defendants would have learned of his alleged injuries or symptoms from the smoke such that they could have disregarded any medical need.

Mr. Griffin cannot choose to ignore his own admissions made under oath. Thus, no reasonable jury could find that any of the custody defendants were deliberately indifferent to any serious medical need that Mr. Griffin might have had.

All of the custody defendants are entitled to summary judgment.

### B. Plaintiff's Eighth Amendment claims against the High-Ranking Official Defendants fail.

Plaintiff cannot establish Eighth Amendment deliberate indifference claims against Defendants Neal, Reagle, Buss, Wardlow, Taylor, and Becher for several reasons. First, Plaintiff has failed to provide evidence that shows conditions existed in A Cell House which posed an increased risk of harm to him on January 14, 2023. Moreover, there is no evidence that any High-Ranking Defendant had actual knowledge of an impending, easily preventable harm prior to the January 14, 2023 fire. Therefore, the High-Ranking Official Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims.

#### 1. Plaintiff attempts to add claims and resurrect respondeat superior liability, contrary to law and the Court's Screening Order.

As an initial matter, Plaintiff seems to be confused about what claims he is actually proceeding on in this matter. In its Screening Order of Plaintiff's amended complaint, the Court gave Plaintiff leave to proceed against High-Ranking Official Defendants "in their personal capacities for monetary damages for deliberate indifference to the risk of harm posed by the fire that occurred in January 2023 in violation of the Eighth Amendment." [ECF 11 at 12 ]. Importantly, the Court dismissed Plaintiff's official capacity claims against the High-Ranking Official Defendants, as well as his claim for respondeat superior liability, because these claims are not actionable under § 1983. [*Id.* at 10-11].

In his opening paragraph addressing the claims against the High-Ranking Official Defendants, Plaintiff even admits, "[t]o be clear, I am not claiming that Supervisor Defendants are liable because they approved, condoned, or turned a blind eye to the actions taken by Incident Defendants on

January 14, 2023." [ECF 145-1 at 21]. Yet Plaintiff argues throughout his brief that several of the High-Ranking Defendants are liable under § 1983 due to their supervisory roles alone. For example, Plaintiff's attempt to extend liability to Defendant Reagle because "[t]he buck stops with her" and, therefore, she must have personally known "or at least should have known" about any increased fire risk from Defendants Neal and Buss's "required" reporting "under state law" to her. [ECF 145-1 at26-27]. Without any evidence to support this assertion, Plaintiff's argument concerning Defendant Regale is one of his many attempts to impute liability on the High-Ranking Official Defendants based on their role, specifically what he believes they should have known and what can be inferred that they knew. With no evidence to support his assertion, Plaintiff's theory rests on what he believes High-Ranking Defendants *should* have known and what can be inferred that they knew. As this Court said in its screening, High-Ranking Official Defendant "cannot be held liable for damages simply because they oversee operations at the prison or within the IDOC." (ECF 11 at10-11); *See also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (no liability under § 1983 without personal involvement, even in the prison context); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2019) (no liability under § 1983 for delegating tasks to subordinates). Plaintiff's attempt to awaken respondeat superior liability, long after this Court put it to bed, must fail.

Plaintiff also attempts to assert that he is "alleging that there was separate unconstitutional conduct that resulted in [his] severe exposure to and inhalation of thick black smoke and proximate injuries therefrom" (*Id.*), but Plaintiff is not proceeding on such claim as evidence from the screening order. [ECF 11 at11]. In fact, the Court expressly did not allow Plaintiff to proceed on any claim related to the response to the fire. (*Id.*). Parties may not amend their pleadings through arguments raised in briefs opposing summary judgment. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997).

**2. Plaintiff has failed to show that his confinement conditions posed a substantial risk of serious harm on January 14, 2023.**

While Plaintiff is correct to point to *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2006), his statements of law have several omissions in an attempt to shift the standard in his favor. In his quotation of *Haywood*, Plaintiff does not acknowledge the complete standard of the subjective prong; not only that he must show that High-Ranking Defendants knew and disregarded an excessive risk to inmate health or safety, but also that the official must *both* be aware of the fact from which the substantial risk inference could be drawn *and* that the High-Ranking Defendants drew such an inference. *Id.* at 1031.

In total, Plaintiff makes 24 statements of different issues that he says support his contention that dangerous conditions in ACH existed and posed a substantial risk of harm to him on January 14, 2023. [ECF 145-1 at22-23]. As noted in the Court's screening order, Plaintiff references the following conditions: "most of the fire extinguishers in the cellhouse were either empty or inoperable; there were few fire drills performed by staff or inmates; the cell doors had to be manually unlocked and could not withstand heat; there were no emergency call buttons inside the cells; and the cell walls contained layers and layers of paint, which provided fuel for a fire should one break out." [ECF 11 at 9]. Now, Plaintiff attempts to add 19 issues in his attempt to expand this Eighth Amendment claim against the High-Ranking Official Defendants that lack evidentiary support and are found nowhere in the screening order. These newly asserted issues and any associated arguments should be disregarded. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002).

Of Plaintiff's 24 total "issues" listed in his response brief, only four have citations to anything and only two of these have citations to this case's record. *See Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment); *Santiago v. City of E. Chicago, Indiana*, No. 2:15 CV 358, 2018 WL 571943 at *5 (N.D. Ind. Jan. 26, 2018) ("It is the function of a court [] to review carefully all of the briefing related to a motion for summary judgement and to eliminate from consideration any argument, conclusion, or assertion unsupported by the documented

evidence in the record"). The Court need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017). As such, the Court should disregard Plaintiff's alleged "issues" that lack any citation to the record.

Of the four factual assertions that Plaintiff does support with some form of citation, he first asserts that there was no operational smoke ventilation exhaust system in ACH. To do this, he cites to *Jenkins v. Bass*, 2025 WL 1916106 (N.D. Ind. July 10, 2025), *reconsideration denied*, 2025 WL 2982380 (N.D. Ind. Oct. 23, 2025), a 2021 case where an inmate barricaded himself into the cell and set it ablaze. However, *Jenkins* does not say this. In the order granting the correctional officer's summary judgment motion, the court discussed that smoke was cleared from the unit "using exhaust fans *and* other fans brought to the unit." *Id.* at *2.

First, Plaintiff states that High-Ranking Defendants knew that the dampers and exhaust systems were inoperable because of *Jenkins.* [ECF 145-1 at23 n .6]. Importantly, none of the High-Ranking Official Defendants was a party to *Jenkins.* 2025 WL 1916106. As such, *Jenkins* cannot be used to impute knowledge of any alleged issues onto the High-Ranking Official Defendants. Next, nowhere in *Jenkins* does the court indicate as to which housing unit the fire took place. *Id.* Additionally, the fire in *Jenkins* took place two years prior to the fire in the instant case, meaning it does not take into account any fire reduction measures ISP may have taken after 2021. *Id.* Finally, *Jenkins* does not show that the housing unit's ventilation system was broken or inoperable. *Id.* Instead, this case mentions that additional fans were brought into the cell house to expel the smoke. *Id.* Critically, nowhere in *Jenkins* does it indicate that the dampers and exhaust systems in the cell house were not operable. *Id.* Plaintiff's attempt to substitute *Jenkins* for actual evidence of AHU lacking a functioning exhaust system is unpersuasive at best, and deceptive at worst.

For his second issue of 24 that has some form of citation, Plaintiff asserts that there were "widespread electrical outlet issues randomly sparking and starting fires." [ECF 145-1 at 23]. To do

this, he points to Defendants Neal, Wardlow, and Buss's declarations[11] that explain that inmates' misuse of outlets is the primary fire cause at ISP. [ECF 145-1 at 23, n. 6 ]. Then, Plaintiff cites to five incident reports which he believes shows instances of "electrical outlets randomly spark[ing] without prisoner tampering." (*Id.*). However, the statements in these reports are inadmissible hearsay as explained in Defendants' Reply to Statement of Material Facts and as noted above. *See supra*, Section I.C(2). Admissibility issues aside, these incident reports do not support Plaintiff's contention that electrical outlets "randomly spark" at ISP, which is explained further below. *Infra*, Section B.3.b. Of these five incident reports, Defendant Buss did not receive any notification. [*See* ECF 115-1 at 1, 20, 70-73]. While Defendant Neal and Defendant Wardlow received notification of the August 31, 2022 water fountain and the October 9, 2022 coffee pot incident, they did not receive notification of the August 6, 2022 water fountain incident. (*Id.*). Only Defendant Taylor was informed of all the reported incidents. (*Id.*). Plaintiff attempts to impute conditions knowledge on *all* High-Ranking Defendants of every fire that has occurred at ISP by pointing to three incidents, despite these incidents' reports not giving notice to all High-Ranking Defendants. No incident report shows that electrical outlets "randomly spark" at ISP, nor that any High-Ranking Defendants had knowledge of outlets doing so.

For his third "issue" with any citation, Plaintiff asserts that staff were non-compliant with the "recommendations made after the 2017 fire" and then lists seven areas of non-compliance. [ECF 145-1 at23]. Plaintiff makes no citation to any 2017 or other recommendation report in making this assertion. Instead, Plaintiff states that Custody Defendants "effectively" testified that only available extinguishers were located in the officer's station. [ECF 145-1 at 23 n. 8]. Plaintiff first cites Defendant Smith's and Walton's incident reports stating that multiple fire extinguishers were utilized in response

[11] In his declaration, Defendant Neal stated that all ISP fires, to "the best of [his] recollection", were due to offender action, typically by the offender "sparking outlets"—meaning that offenders place metal objects into the electrical socket to intentionally light a fire. (ECF 132-7 at ¶50). Defendant Buss also declared that she was "not aware of there being issues with outlets sparking on their own and creating a fire risk." (ECF 132-2 at ¶ 5). Defendant Wadlow stated that he was also unaware of any electrical outlets sparking without offenders intentionally manipulating the outlets. (ECF 132-10 at ¶10).

to the January 14, 2023 fire. [ECF 113-1 at 128, 133]. Nowhere in these reports do Custody Officers "effectively" admit or testify that there was any non-compliance with any uncited report. Additionally, Plaintiff cites a fact that he concedes to State Defendants' material fact statement that *additional* fire extinguishers were in the process of being placed on range endcaps prior to the fire, and that *additional* extinguishers were placed at the endcaps and in each ISP cell house after the fire. [ECF 139 at ¶¶ 139]. Plaintiff attempts to twist this into evidence that no extinguishers were at endcaps *at all* on the day of the fire. [ECF 146 at ¶ 139]. Plaintiff fails to connect how the earlier planned and later executed installation of *additional* extinguishers proves that *no* fire extinguishers were accessible on endcaps on January 14, 2023. Additionally, Plaintiff fails to tie any of these assertions to High-Ranking Official Defendants' knowledge of the conditions in AHU.

Fourth, and finally, in an attempt to buttress what appears to be all 24 assertions[12], Plaintiff cites to *Dwyer v. Neal*, 2022 WL 462017 (N.D. Ind. Feb. 15, 2022) as evidence that all High-Ranking Defendants "'participated in high-level meetings' in which the dangerous conditions were discussed, was sufficient to make a plausible claim [they] knew of the dangerous conditions." [ECF 147-1 at 26]. Plaintiff attempts to use *Dwyer* as evidence to prove that the High-Ranking Official Defendants, in this case, participated in "high-level meetings" about his long list of assertions. [ECF 145-1 at 23]. Yet, Plaintiff points to nothing in the evidentiary record *in this case* to show that such meetings occurred here. [*Id.*]. Stated differently, Plaintiff has failed to cite any evidence that shows the High-Ranking Official Defendants participated in "high-level meetings" that discussed his alleged conditions at issue prior to the January 14, 2023 fire.[13] This Court need not "scour the record" for evidence that might be relevant to shore up Plaintiff's unsupported assertions. *Grant*, 870 F.3d at 572.

---

[12] It is unclear for Plaintiff's three page long sentence if his citation to *Dwyer* is to support only assertion number 24, or to support the entire list. This confusion matters not, as this citation still fails to support any assertion listed.
[13] It is important to note that only Defendant Neal was named as a defendant in *Dwyer*. *See Dwyer v. Neal,* No. 3:18-CV-995 JD, 2022 WL 462017 (N.D. Ind. Feb. 15, 2022). With the exception of Defendant Neal, those Defendants who

Plaintiff next points to *White v. Cooper*, to support his idea that the mere assertion of a dangerous fire condition—such as an inoperable smoke and fire alarm system—is enough to survive a motion to dismiss. 55 F.Supp.2d 848, 858 (N.D. Ill. May 21, 1999). However, the Rule 12 pleading standard is not the same standard courts apply for Summary Judgment under Rule 56. At Summary Judgment, the non-moving party must "put up or shut up." *Grant*, 870 F.3d at 568. Throughout his responsive documents, Plaintiff points to nothing persuasive to show that such a condition existed at ISP at the time of the fire, nor that any of the High-Ranking Defendants had actual knowledge of these conditions at the time of the fire. Just because the plaintiff in *White* met his pleading standard under Rule 12, this does not mean that Plaintiff has met his burden to survive summary judgment.

Finally, Plaintiff points to two fires at ISP prior[14] to January 14, 2023 as evidence "there were numerous fires at ISP and [High-Ranking] Defendants have taken little to no meaningful steps to address fire safety deficiency identified" after each fire. [ECF 145-1 at 24]. As stated above, the fire in *Dwyer* and *McGuire* occurred in a different cellhouse than the 2023 fire. *Jenkins* does not state which cellhouse fire occurred. Contrary to his assertion, *Jenkins* makes no statement as to the exhaust/damper system functionality in the unnamed cellhouse. Finally, only Defendant Neal was a party to *Dwyer*, and not to the other two cases. No other High-Ranking Defendant was a party to the three cases that Plaintiff continually cites to in an attempt to impute knowledge on them.

Of the remaining unsupported "issues," Plaintiff provides no evidence to support his assertion that there were conditions in ACH that increased his risk of harm during the January 14, 2023 fire. Instead, Plaintiff makes conclusory statements that lack evidentiary support. [*See* 145-1 at 22-24]. For example, Plaintiff claims the "double-locking manual cell doors that require multiple steps to open"

---

"participated in high-level meetings" in *Dwyer* could not have been the same people as the other High-Ranking Defendants in this case.

[14] Plaintiff points again to *Dwyer* and *McGuire v. Dykstar*, No. 3:18-CV-197-DRL-MGG, 2020 WL 4735264 (N.D. Ind. Aug. 14, 2020). Both of these cases arise from the same fire in BHU on April 7, 2017. *Id.* at *1.

created a substantial risk of harm to him on January 14, 2023. [*Id.* at 22]. Yet, Plaintiff does not cite anything to support this belief. Another example is Plaintiff's belief that the "countless layers of flammable paint caked onto the cell walls" created a substantial risk of harm to him on January 14, 2023. [*See* ECF 145-1 at22-24]. Besides being unsupported, Plaintiff's logic is flawed. First, Plaintiff cites nothing in the record to show that there are layers of paint on the cell walls in AHU and that this paint is flammable but instead asks the Court to assume this as fact. Second, Plaintiff fails to show how this condition will lead to a fire. Paint—no matter how allegedly flammable—does not spontaneously combust and Plaintiff points to nothing in the record to support otherwise. In much the same way, nothing about electronic outlets being near water sources and cells not being built with emergency call buttons, and the locking mechanisms for the cell doors, are items that start fires. To be clear, not even the Fire Marshall was able to determine the cause of the January 14, 2023 fire. See ECF 113 at 65 (Conclusion stating that "[d]ue to the damage of the found items [located at the area of origin of the fire], a definitive ignition source could not be determined."]. Plaintiff cannot speculate as to the cause of the fire. Plaintiff also makes several unsupported claims concerning custody staff's response to the fire but this is not at issue. Again, Plaintiff was not allowed to proceed with any claims related to the fire. [*See* ECF 11 at 4-7].

In any event, Plaintiff's Eighth Amendment claim against the supervisory defendant is not the time for him to raise all his perceived issues with the State Prison. Even assuming Plaintiff's lausdry list of issues are actually possible "dangers" (they are not), under the Eighth Amendment, "Prison officials cannot be expected to eliminate the possibility of all dangers." *Thomas v. Owens*, No. 3:07-CV-315, 2007 WL 2225925, *2 (N.D. Ind., Aug. 1, 2007) (citing *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991)). "Deliberate indifference can be inferred only where defendants know there is a strong likelihood rather than a mere possibility that [harm] will occur." *Thomas*, 2007 WL 2225925 at*2 (citing

*Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)). Plaintiff cannot establish that the High Ranking Official Defendants were aware of a strong likelihood of harm to Plaintiff.

**3. There is no evidence that High-Ranking Official Defendants were deliberately indifferent to any risk of harm.**

In an attempt to establish the actual knowledge prong for the Deliberate Indifference analysis as to High-Ranking officials, Plaintiff asserts that "there are multiple ways actual knowledge can be inferred." (ECF 145-1 at 24). To do this, Plaintiff attempts to meld caselaw evaluating the 12(b)(6) pleading standard for deliberate indifference and qualified immunity. (*Id.* at 24-25). Plaintiff, citing *Potts v. Manos*, No. 11 C 3952, 2013 WL 5968930 at *5 (N.D. Ill. Nov. 7, 2013), states that he can "show deliberate indifference of high-level officials by demonstrating that he fell victim to a general, obvious risk to inmate safety posed by the problem whose pervasiveness would lead to the inference that Defendants had actual knowledge of [its] substantial risk." *Potts* is unpersuasive in this situation. *Potts* was an order on a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and not on a motion for summary judgment. The *Potts* court discussed whether the plaintiff had sufficiently alleged facts to sustain a systematic claim against a high-level official. 2013 WL 5968930 at *4-5. *Potts* does not negate Plaintiff's burden of providing evidence that contradicts High-Ranking Defendants' evidence supported statement of material facts on summary judgment. *Grant*, 870 F.3d at 568. At no point in *Potts* does the court discuss what the plaintiff would need to prove his allegations. *Potts* does not hold that the plaintiff in that case created a dispute of material fact for summary judgment purposes simply by alleging that the high-level defendants participated in high-level meetings about the condition. Plaintiff, as the non-moving party, must provide some evidence that High-Ranking Defendants actually knew of the fact from which the deliberate indifference inference could be drawn, and that they actually drew that inference. *Farmer*, 511 U.S. at 837. He fails to do this.

Next, Plaintiff cites to *Byron v. Dart*, 825 F.Supp.2d 958, 963-64 (N.D. Ill. Nov. 21, 2011), to support an alternative "way to demonstrate actual knowledge is by relying on the inference that common problems in an institution are commonly known by the personnel of that institution." (ECF 145-1 at 25). Again, *Byron*—as a 12(b)(6) motion case—does not relieve Plaintiff of proving the actual knowledge prong in the deliberate indifference analysis, nor does it circumvent his requirement to establish the existence of a genuine issue of material fact for trial. *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 884 (1990).

The undisputed evidence shows that none of the High-Ranking Official Defendants had actual knowledge of an impending, easily preventable harm prior to the January 14, 2023 fire.

**a. Defendant Reagle is entitled to summary judgment.**

Defendant Christina Reagle is entitled to summary judgment. In his opening paragraph addressing the claims against the Supervisory defendants, Plaintiff even admits, "[t]o be clear, I am not claiming that Supervisor Defendants are liable because they approved, condoned, or turned a blind eye to the actions taken by Incident Defendants on January 14, 2023." [ECF 145-1 at 21]. Plaintiff, while initially disclaiming any attempt to do so, changes course and attempts to argue that Defendant Reagle should be held liable merely based on her position because "[t]he buck stops with her." [ECF 145-1 at 26]. Plaintiff starts by citing Indiana Code 11-8-2-7. However, this statute only states "The commissioner shall determine which state owned or operated correctional facilities are to be maintained for criminal offenders and which are to be maintained for delinquent offenders" and goes on to describe the commissioner appointed a Warden. Indiana Code Section 11-8-2-7. Nothing in this statute imputes knowledge to Defendant Reagle of any condition that posed an increased risk of harm to Plaintiff.

Next, Plaintiff cites an IDOC Policy and Administrative Procedure ("AP") 00-00-101 ("Status Report policy"), which was NOT produced during this discovery. The contents of this policy should

not be considered and barred under the Rule 37 automatic exclusion rule. *See supra*, Section I.C(1) (discussion of exclusion of this policy). But even if the policy was produced and considered for summary judgment, the policy does not assist Plaintiff's argument against Defendant Reagle. There is nothing in the language that Plaintiff quotes to impute any knowledge onto Defendant Reagle to be able to hold her liable here.

Plaintiff makes several unsupported statements throughout his argument against Defendant Reagle. The unsupported statements include:

- "Defendant Reagle is responsible for setting AP and authorizing facility policies." (ECF 145-1 at 26).
- "Defendants Neal and Buss are required, under state law, to report to Defendant Reagle, at least quarterly, the conditions of ISP, fire incidents, fire safety measures taken to address the fire incidents, fire equipment purchases, and preventative measures taken in relation to fires." (ECF 145-1 at 26).

These unsupported statements must be disregarded. *See Klein v. Daniels*, No. 2:19-CV-484-TLS, 2025 WL 33535, at *2 (N.D. Ind. Jan. 2, 2025) (Court disregarding unsupported factual statements on summary judgment). *See also Mace v. Ray*, No. 3:20-CV-412-MGG, 2022 WL 2644118, at *2 (N.D. Ind. July 8, 2022) (same).

Even assuming that Plaintiff's referenced Status Reports policy was admissible, the policy does not mention that Defendant Reagle is the one who receives those reports or that she is the one who reviews all reports. Instead, Plaintiff's citation to the policy just states "Department facilities shall report its activities to Central Office" (ECF 145-1 at 26) but there is no mention that Defendant was receiving and reviewing all reported activities. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks . . . ").

There is also no evidence in the policy that Defendants Neal and Buss are the ones reporting the ISP's activities to Central Office. Similarly, there is no evidence that Defendants Neal and Buss report fires and subsequent injuries or deaths to Defendant Reagle. There is no evidence that Defendant Reagle was aware of "widespread issues with the electronical outlets"; no evidence that Defendant Reagle was aware of the "the frequency of fires at ISP"; no evidence that Defendant Reagle was aware of any of the specific purchases ISP made, including additional fire extinguishers and the reasons for those purchases; or of any of specific alleged deficiencies or complaints from prisoners, including those perceived issues Plaintiff mentions in his reply, (ECF 145-1 at22-24,26-27). In short, there is no evidence that Defendant Reagle had any knowledge of any risk of harm to Plaintiff. "At the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and 'show what evidence [he] has that would convince a trier of fact to accept [his] version of events,'" *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014), quoting *Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007). Here, Plaintiff has failed to put up the evidence for his Eighth Amendment claim against Defendant Reagle. Contrary to Plaintiff's unsupported statements (ECF 145-1 at 28), there is no evidence that Defendant Reagle was aware of any alleged widespread fires – in fact, there is no evidence of widespread fires at all – and there is no evidence that she was aware of any alleged deficiencies in fire safety protocol. Plaintiff's argument against Defendant Reagle is based on her former position as the IDOC commissioner, that she somehow "should have known" about alleged deficiencies existing at ISP. [ECF 145-1 at 27]. However, without any evidence as support in the record, Plaintiff's unsupported inferences grounded on "only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017), quoting *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Defendant Reagle has no personal involvement here and cannot be held liable. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.

1996). There is no evidence from which a reasonable jury could infer that Defendant Reagle was deliberately indifferent to a risk of harm to Plaintiff.

Finally, the two cases Plaintiff cites to in his response do not help his cause. *See* ECF 145-1 at 27-28. Plaintiff cites to *Doe v. Bd. of Educ. of Consol. Sch. Dist. 230 Cook Cnty., Ill.*, 18 F. Supp. 2d 954, 957 (N.D. Ill. 1998), but his reliance on that case is misplaced. Plaintiff cites *Doe* for the general standard of personal involvement and supervisory liability under Section 1983. But Plaintiff explicitly stated he was not proceeding on a theory of supervisory liability (ECF 145-1 at 21). *Doe* did not even involve inmate claims of deliberate indifference but instead involved high school students suing a school district, district administrators, and a teacher based on allegations that a teacher's sexual relationship with them violated their constitutional rights. *Doe*, 18 F. Supp. 2d at 954.

Plaintiff's citation to *Sinn v. Lemmon* also does not help his cause. In *Sinn*, the Seventh Circuit explained that:

> Individual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are "aware of 'a systematic lapse in enforcement' of a policy critical to ensuring inmate safety" yet fail to enforce that policy… But an inmate cannot show a "widespread practice of an unconstitutional nature," such as a custom of ignoring prison policy, by pointing to "isolated incidents of inmate-on-inmate brutality."

*Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018).

Much like the Court found in *Sinn*, Plaintiff has not presented evidence of a history or pattern of fires at ISP or deficiencies in fire safety at ISP such that a jury could infer knowledge of such onto Defendant Reagle as the former Commissioner. Thus, Plaintiff's Eighth Amendment claim against Defendant Reagle fail and she is entitled to summary judgment in her favor.

**b. Defendant Neal is entitled to summary judgment.**

Defendant Neal is entitled to summary judgment. In his response brief, Plaintiff begins his argument by asserting "[s]ince the 2017 fire, Defendant Neal has failed to take any real meaningful steps to address the dangerous conditions of confinement prisoners face in ACH." [ECF 145-1 at 28].

The indisputable evidence proves otherwise. After the 2017 fire, there were several steps taken to promote and ensure fire safety, such as the refurbishment of fire alarms, the repair and replacement of dampers and exhausts in the ceilings of different cellhouses, the purchase of the foam backpacks systems and additional fans for the ISP fire department to extinguish fires and exhaust smoke, the purchase of additional water and ABC fire extinguishers for the entire prison, the replacement of plastic property boxes to steel property boxes for offenders, the use of fire-retardant mattresses, and the upgrade of fire hydrants in 2019. [ECF 132-7 at ¶¶ 9, 10, 12, 13, 14, 19, 20]. These additional measures were taken to promote fire safety and ensure the safety and security at ISP. [ECF 132-7 ¶ 22]. Plaintiff's contention that Defendant Neal "took virtually no action" (ECF 145-1 at 29) after the 2017 fire is blatantly false and not supported by any evidence in the record.

Next, Plaintiff alleges that Defendant Neal knew of several alleged "shortcomings" that were dangerous conditions of confinement in ACH, like electric outlets randomly sparking, the lack of emergency call buttons in cells, layers of paint on the walls, inoperable fire suppressant systems, and double locking manual doors.[15] [ECF 145-1 at 28]. But there is no evidence to support Plaintiff's contention that these alleged "shortcomings" existed on January 14, 2023, or that they created a substantial risk of harm to Plaintiff. Regardless, there is no evidence that Defendant Neal had actual knowledge of impending, easily preventable harm prior to the January 14, 2023 fire.

Plaintiff also claims that Defendant Neal "carried a variety of responsibilities" due to his position as Warden, including but not limited to, reviewing prison infrastructure to ensure safety, approving proposals to change post orders, ensuring the smoke exhaust ventilation systems and smoke

[15] Plaintiff also listed several other alleged conditions: lack of staff fire-safety training, proximity of electrical outlets to water sources, prison staff's failure to alter and activate inmate firefighters, prison's staff refusal to perform timely security checks, inoperable smoke exhaust ventilation system, lack of fire extinguisher placement, and lack of storage containers or shelving for offender property. [ECF 145-1 at28]. As explained above, Plaintiff's newly asserted issues and any associated arguments should be disregarded. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). But even considering these additional conditions, there is no evidence that all of these "issues" or "complaints" Plaintiff perceives created a substantial risk of harm to him on January 14, 2023.

detectors were in working order, ensuring that fire drills were conducted properly, and ensuring that electrical outlet and fire equipment inspections were addressed. [ECF 145-1 at 29]. Yet, Plaintiff fails to cite to anything in the record to support his allegations concerning Defendant Neal's alleged responsibilities. The Court should disregard Plaintiff's alleged responsibilities for Defendant Neal due to a lack of evidentiary support. *Klein v. Daniels*, No. 2:19-CV-484-TLS, 2025 WL 33535, at *2 (N.D. Ind. Jan. 2, 2025) (Court disregarding unsupported factual statements on summary judgment). Moreover, the Court should disregard these unsupported contentions as Plaintiff appears to be attempting to impose liability on Defendant Neal solely based on his role as warden. *See Burk*, 555 F.3d 592 (no liability under § 1983 for delegating tasks to subordinates). But Plaintiff admits he is not proceeding on a supervisory theory of liability (ECF 145-1 at 21), so by his own admission, Plaintiff's arguments fail.

Next, Plaintiff attempts to argue that Defendant Neal was aware of his alleged dangerous conditions "through dorm rep meetings, incident reports, previous litigation, as well as the pervasiveness of the conditions." [ECF 145-1 at 29]. However, the record does not contain any such evidence. [*Id.*]. Notably, Plaintiff cites to nothing in the record to support his baseless and conclusory statements. [*Id.*]. When the moving party has met his burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Plaintiff's baseless conclusory statement must be disregarded. "Summary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (citing *Bordelon*, 811 F.3d at 989). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted). Again, nothing in the record supports the idea that Warden

Neal had actual knowledge of conditions in A Cell House that created a substantial risk of harm to Plaintiff prior to the January 14, 2023 fire.

Plaintiff repeatedly tries to impute knowledge onto Defendant Neal by citing *Dwyer v. Neal*. No. 3:18-CV-995 JD, 2022 WL 462017 (N.D. Ind. Feb. 15, 2022). However, Plaintiff misrepresents this case in his response brief. Specifically, Plaintiff alleges that Defendant Neal was aware of his alleged dangerous conditions because they are "fundamentally the same dangerous conditions in 2017 that were present on January 14, 2023." [ECF 145-1 at 29]. This is incorrect. *Dwyer* dealt with a fire in B Cell House in April of 2017 that caused the death of an inmate. 2022 WL 462017, at *1, 4. However, the *Dwyer* opinion does not address the issues with infrastructure that Plaintiff complains about here. *Id.* Specifically, there is no mention in *Dwyer* of the lack of emergency call buttons, layers of paint on the cell, inoperable fire suppressant systems, and double locking manual doors. *Id.* As such, it is unclear how *Dwyer* informed Defendant Neal of Plaintiff's alleged dangerous conditions that were not even at issue in that case.[16] There is also no evidence that these alleged infrastructure issues posed a substantial risk of fire, much less any evidence that these alleged infrastructure issues would cause another fire 6 years later in an entirely different cell house. Additionally, Plaintiff cannot rely on *Dwyer* to demonstrate that Defendant Neal had knowledge of sparking electrical outlets at the time of the January 2023 fire, as the "facts" in *Dwyer* are materially different from those in this case. There is no evidence of "widespread, persist issues with fires and electrical sparking" in this record. *Cf.* 2022 WL 462017, at *4. Notably, Plaintiff cannot cite to anything in this record to show that Warden Neal "actual knowledge of specific facts that would support an inference" that he was aware that following the B

[16] Plaintiff mentions that Mr. Smith died under the same circumstances as Mr. Devine in 2017. (ECF 147-1 at 32). To be clear, in *Dwyer*, the Court said "the State Fire Marshal determined that the fire in Devine's cell was accidental, that Devine tried to unplug the cord of the television to stop the fire, and that there was a 'reasonable probability of an electrical event' having caused the fire. *Dwyer v. Neal*, 2022 WL 462017, at *4 (N.D. Ind. Feb. 15, 2022). Unlike in Dwyer, Plaintiff has provided no citation to the cause of the fire in Smith's cell or that there were "faulty outlets" in A Cell House. To be clear, contrary to what Plaintiff asserts, he has not established that the same conditions that led to Mr. Devine's fire led to the fire in Mr. Smith's cell.

Cell House 2017 fire, there were sparking electronical outlets that would created a substantial risk of harm to Plaintiff. *Chatham v. Davis*, 839 F.3d 679 (7th Cir. 2016). Further, ISP has taken additional precautions since the 2017 fire to promote and ensure fire safety. [ECF 132-7 at ¶¶ 12-17, ¶ 20]. The *Dwyer* opinion makes no references to changes made after 2017 nor does it address the conditions at issue in this case.[17] Therefore, Plaintiff cannot rely on *Dwyer* to support his argument that Defendant Neal "was aware of these same dangerous conditions after the 2017 fire." [ECF 145-1 at 28-29].

Plaintiff also tries to impute knowledge onto Defendant Neal by citing *Jenkins v. Bass*, No. 3:23-CV-783, 2025 WL 1916106 (N.D. Ind. July 10, 2025), *reconsideration denied*, No. 3:23-CV-783-APR, 2025 WL 2982380 (N.D. Ind. Oct. 23, 2025). Specifically, Plaintiff alleges Jenkins shows that "ISP (*i.e.* Defendant Neal) was aware of inoperable smoke ventilation system in ACH in 2021." [ECF 145-1 at 29]. Similarly to *Dwyer*, Plaintiff misrepresents the facts of this case too. First, Defendant Neal was not a party in *Jenkins*. 2025 WL 2982380. There is no evidence that Warden Neal was aware of this opinion or of the specific circumstances surrounding the allegations in *Jenkins*. Second, *Jenkins* does not reference any specific cell house, much less A Cell House. *Id.* at *2. Further, there is no mention in this case of "inoperable smoke ventilation system." *See id.* Instead, Plaintiff seems to be referring to the fact in *Jenkins* that inmate firefighters were instructed to use fans to disperse the smoke. *Id.* at *2. However, the fact that inmate fighters used fans does not mean the ventilation system in *Jenkins* was inoperable. The ISP fire department utilizes ventilation and exhaust fans on an "as-needed" basis to exhaust smoke from buildings. [ECF 162-1 at ¶ 22]. These ventilation and exhaust fans are utilized in collaboration with the ventilation systems to exhaust smoke as quickly as possible. [*Id.*]. Importantly, this is also what happened on January 14, 2023. [*Id.*]. Thus, there is no evidence that the ventilation

---

[17] In his response brief, Plaintiff suggests that the radios were not working which is "another problematic issue that was identified when Mr. Devine died in the 2017 Fire." [ECF 147-1 at 31]. As discussed in State Defendants' *Reply in Support of Their Statement of Material Facts*, Plaintiff has failed to produce any admissible evidence to support this contention. Thus, that contention must be disregarded as unsupported. *Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

system in *Jenkins* was inoperable, similar to how there is no evidence that the ventilation system was inoperable on January 14, 2023. In fact, the ventilation system in ACH had been checked two (2) days before the fire on January 12, 2023 and no issues were reported with the ventilation system [ECF 162-1 at ¶ 21 and p. 7]. Therefore, Plaintiff cannot rely on *Jenkins* to show that Defendant Neal had notice of dangerous conditions prior to the January 14, 2023 fire.

It must be noted that in *Jenkins*, there is no mention of how the fire started. From the opinion, another inmate was threatening "to set his cell on fire if he did not receive his tray." 2025 WL 1916106. *Jenkins* also does not support Plaintiff's argument that Warden Neal has specific knowledge of any widespread fires or electronic issues. The incident that gave rise to the lawsuit in *Jenkins* is from December 2021, well over a year before the January 2023 fire. *See id.* Again, nothing in *Jenkins* supports an inference of "widespread fires" or outlets randomly sparking to impute knowledge of specific facts to Warden Neal of specific dangers or harms to Plaintiff.

Next, Plaintiff attempts to show that Defendant Neal "was made aware that outlets do in fact randomly spark and set fires without prisoners having tampered with them. [ECF 145-1at 30]. To support this argument, Plaintiff cites a series of incident reports: an incident report from August 30, 2022 by Sergeant Stovall (ECF 115-1 at 1), an incident report from August 18, 2022 by Lieutenant Jones (ECF 115-1 at 12), an incident report from August 6, 2022 by Lieutenant Darschewski (ECF 115-1 at 20), an incident report from May 9, 2022 by Lieutenant Darschewski (ECF 115-1 at 40), an incident report from October 9, 2022 by Captain Gillespie (ECF 115-70), an incident report from October 9, 2022 by Lieutenant Jones (ECF 115-1 at 72), and an incident report from October 9, 2022 by Sergeant Mitchell (ECF 115-1 at 73). As discussed in above, *supra.* Section I.C(3) (above), these incident reports are inadmissible hearsay and contain hearsay within hearsay. *See Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

Even if these incident reports were admissible (they are not), they do not support Plaintiff's argument that Defendant Neal knew of a "widespread problem with electrical outlets." [ECF 145-1 at 31]. For example, the incident reports from October 9, 2022 by Captain Gillespie, Lieutenant Jones, and Sergeant Mitchell all describe a fire resulting from a coffee pot in the Sergeant's Office. [ECF 115-1 at 70, 72, 73]. Importantly, the incident report from Captain Gillespie stated the "the "cause of the fire was a coffee pot that was left on and unattended." [ECF 115-1 at 70]. Similarly, the incident reports from May 9, 2022 and August 18, 2022 reference hotpots catching fire or melting. [ECF 115-1 at 12 ("hotpot was caught on fire causing the fire alarm to go off.")]; [ECF 115-at 1 at 40 ("[u]nit staff located a hot pot that began melting")]. The incident report dated August 31, 2022 by Sergeant Stovall also cannot be used to support Plaintiff's response because it demonstrates that the water fountain was plugged into a faulty socket which caused sparks and smoke. [ECF 115-1 at 1]. Finally, Plaintiff cannot use the incident report from August 6, 2022 by Lieutenant Darschewski to support his response. [ECF 115-1 at 20]. This report references a "small fire that started at an electrical outlet near the water fountain." [*Id.*]. Yet, nowhere in this report does it indicate the cause of this fire or that there the "electrical outlet randomly spark[ed]." [*See id.*]. These incident reports do not show that "electrical outlets randomly spark" out of nowhere as Plaintiff contends. As such, Plaintiff cannot use these incident reports to support his argument that "electrical outlets randomly spark," let alone that this was a "widespread problem" prior to January 14, 2023. [ECF 145-1 at 30-31].

Additionally, Plaintiff cites to paragraph 35 of Offender Taylor's declaration and asserts that Defendant Neal "was explicitly informed during dorm rep meetings that … that the conditions of confinement in the cellhouses were dangerous and posed a risk of harm in the event of the fire." As discussed above, *supra*, Section I.B, Plaintiff cannot use Offender Taylor's declaration to support his assertion that Defendant Neal was made aware of dangerous conditions of confinement prior to the January 14, 2023 fire as the specific citation Plaintiff references is also inadmissible hearsay. *Supra*,

Section I.B. *See Gunville*, 583 F.3d at 985. Plaintiff can point to no admissible evidence that shows that Defendant Neal was "explicitly informed" of any alleged dangerous conditions or concerns of fire safety during dorm rep meetings. Plaintiff's unsupported contentions must be disregarded. *Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

The properly supported evidence from Warden Neal who has personal knowledge from actually attending the dorm rep meetings– unlike Pierre Taylor, who lacks personal knowledge – demonstrates that Warden Neal was unaware of any dorm rep meeting discussing fire safety concerns prior to January 14, 2023. [ECF 132-7 at ¶ 44]. Additionally, Defendant Neal reviewed available copies of minutes from dorm rep meetings for the two years prior January 14, 2023 fire. [*Id.* at ¶ 46]. The minutes that Defendant Neal reviewed did not show that issues related to fire safety were raised or discussed. [*Id.*].

Finally, Plaintiff attempts to argue that "recommendations were made after Mr. Devine was burned alive in 2017" that Defendant Neal disregarded, which then resulted in the January 14, 2023 fire. [ECF 145-1 at 30-31]. However, Plaintiff has failed to produce *any* evidence of the alleged "recommendations" that were made after the 2017 fire that Defendant Neal allegedly failed to follow. [*See id.*]. Instead, Plaintiff cites a Critical Incident Report Briefing and a page from a Critical Incident Report concerning the January 14, 2023. [ECF 113-1 at 86, 108]. These reports gave "recommendations for plans of improvement" after the January 14, 2023 fire. [*Id.*]. However, the Critical Incident Report documentation does not support Plaintiff's Eighth Amendment claim against Defendant Neal because these were created *after* the January 14, 2023 fire. [*Id.*]. This does not support Plaintiff's claim that Defendant Neal knew and disregarded a substantial risk of harm to him *before* January 14, 2023. As such, Plaintiff's citation to *Gary v. Hardy* does not help his argument as there is no evidence that Defendant Neal was "[k]knowingly persisting in an approach that does not make a dent in the problem" prior to January 14, 2023. 826 F.3d 1000, 1009 (7th Cir. 2016). Instead, the

record shows that Defendant Neal has consistently taken reasonable steps to address fire safety at ISP before and after[18] January 14, 2023. [ECF 132-7 at ¶¶ 8-22].

Plaintiff also provides a list of alleged deficiencies that he claims exist "nearly three years later," [ECF 145-1 at31-32]. At the outset, Plaintiff's discussion of currently alleged deficiencies are immaterial to State Defendants' liability claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Regardless, Plaintiff fails to cite to any evidence to support his alleged conditions that he claims are currently present at ISP." [ECF 145-1 at31-32]. Thus, these assertions must be disregarded as unsupported. *Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

Here, Plaintiff has failed to provide any evidence to support his claim that Defendant Neal knew of, let alone disregarded, any of his alleged dangerous conditions prior to the January 14, 2023, fire. *See Petties v. Carter*, 836 F.3d 722 (7th Cir. 2016), as amended (Aug. 25, 2016) ("a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm."). Specifically, Plaintiff claims that Defendant Neal had knowledge of "widespread fires at ISP" but there is no evidence of this in the record. [ECF 145-1 at 32]. Critically, there is no evidence that Defendant Neal had actual knowledge of a substantial risk of serious harm existed or that he drew that inference to show deliberate indifference. *Farmer*, 511 U.S. at 837. Because there is no evidence that a reasonable jury could find that Defendant Neal was deliberately indifferent to a serious risk of harm to Plaintiff, he is entitled to summary judgment in his favor.

**c. Defendant Buss is entitled to summary judgment.**

Defendant Dawn Buss is entitled to summary judgment. In his response brief, in the opening paragraph addressing the claims against the Supervisory defendants, Plaintiff even admits, "[t]o be

---

[18] After the January 14, 2023 fire, additional water and ABC fire extinguishers were placed on the ranges of each cell house and began hands-on fire extinguisher training in addition to their NEO training. [ECF 132-7 at ¶13, ¶ 21]. These were recommendations made in the Critical Incident Report documentation that Plaintiff cited. [ECF 113-1 at 86, 108].

clear, I am not claiming that Supervisor Defendants are liable because they approved, condoned, or turned a blind eye to the actions taken by Incident Defendants on January 14, 2023." (ECF 145-1 at 21). Plaintiff, while initially disclaiming any attempt to do so, attempts to shift the issues and argues that Defendant Buss should be held liable merely based on her position as one of the Deputy Wardens at ISP.

At the outset, it must be established that Defendant Buss was not involved in the case *Dwyer v. Neal, et al.,* No. 3:18-CV-995-JD (N.D. Ind. closed Sept. 12, 2023). The *Dwyer* opinion makes no references to Dawn Buss at all. *See id.* In any case, "[a] the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and show what evidence he has that would convince a trier of fact to accept his version of events," *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). Put differently, Plaintiff must show that based on the record *in this case*—not any other case—Defendant Buss is liable under the Eighth Amendment. *Id.* Plaintiff's response illustrates that he is fundamentally incapable of satisfying this burden.

A comparison of Plaintiff's briefing and the *Dwyer* opinion, shows that Plaintiff is largely mirroring his arguments after the Court's *Dwyer* opinion. This ignores the fact that the Dwyer involved an entirely different record, entirely different discovery and testimony, and different defendants (except Warden Neal).

In his response brief, Plaintiff references findings relating to Deputy Warden Gann, a defendant in the *Dwyer* matter. 2022 WL 462017 at * 21. In essence, Plaintiff asks this Court to consider evidence produced in an entirely separate matter for Defendant Buss. [*See* ECF 145-1 at 32-34]. On the contrary, this Court can only consider the record before it in *this* matter. *See Logan v. City of S. Bend*, 564 F. Supp. 3d, 737-738 (N.D. Ind. 2021) ("The court can only consider admissible evidence in deciding a summary judgment motion."), *aff'd sub nom. Est. of Logan v. City of S. Bend, Indiana*, 50 F.4th 614 (7th Cir. 2022) (citation omitted). Therefore, Plaintiff's unsupported allegations regarding

Defendant Buss's supposed responsibilities by reference to *Dwyer,* an entirely separate case, should not be considered in ruling on the pending summary judgment motion. *See id.*; *see also* N.D. L.R. 56-1(e).

Likewise, the Court should disregard Plaintiff's unsupported (or outright contradicted) allegations regarding Defendant Buss's supposed knowledge, responsibilities, or conduct. *Id.*; *see* [ECF 145-1 at 32-34]. Plaintiff alleges that Defendant Buss is "[r]esponsible for developing, establishing, and implementing institutional policies, procedures and objectives, supervising the facility when Defendant Neal was absent, training staff, and evaluating their performances, reviewing the monthly inspection reports, reviewing incident reports, and ensuring general safety of the facility." [ECF 145-1 at 32]. Indeed, these unsupported statements must be disregarded. *Id.*; *see Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

Plaintiff further argues that Defendant Buss was aware of alleged issues based on his evidence of "daily meetings concerning incident reports, dorm rep meetings, and prisoner and firefighter concerns and complaints, as well as the pervasiveness of conditions"[19] – of which Plaintiff has not provided proper or admissible evidence – that Defendant Buss was allegedly aware of issues or "dangerous conditions in ACH." (ECF 145-1 at 32-33). The record does not contain any documentation from which knowledge of any risk of harm could be imputed on Deputy Warden Buss. Notably, Plaintiff cites to nothing in the record to support his baseless and conclusory statements. When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Plaintiff's baseless conclusory statement must be disregarded. "Summary

---

[19] In the *Dwyer* opinion, the Court states with respect to defendant Deputy Warden Gann that there is a genuine dispute as to whether he knew about a substantial harm to the prisoners, referencing "daily meetings concerning incident reports, as well as the pervasiveness of the conditions." *Dwyer v. Neal*, 2022 WL 462017 at * 22. In the event that Plaintiff may be copying from the *Dwyer* opinion for this legal arguments here in his attempt to survive summary judgment, the Court should disregard such arguments as that are not based on the record in this case.

judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (citing *Bordelon*, 811 F.3d at 989). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Unvi.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted).

Instead, one of Plaintiff's only citations is to Defendant Buss's interrogatory responses, which asked how prisoners "in distress" could get an officer's attention. [ECF 145-1 at 33 citing Phillips at Docket 76 at 4]; *See also* ECF 73 at 4 (Buss interrogatory responses in this case). Plaintiff believes Defendant Buss's interrogatory response shows she supposedly knew the *only* way prisoners could get attention was to yell. [ECF 145-1 at 35]. This is a mischaracterization of Defendant Buss's response as not only is her response not in reference to the specific incident at issue, but her response is not limited to "yell[ing] out." [ECF 73 at 4) (response to Interrogatory No. 6)].

Again, there is no evidence to support Plaintiff's contentions that Defendant Buss is "responsible for reviewing incident and inspection reports" or that she is aware of the alleged "widespread issues with the electrical outlets" as Plaintiff contends without any evidence. [ECF 145-1 at 33]. There is no evidence that Defendant Buss was responsible for training staff or ensuring the inspection of outlets, performing security checks, or regarding fire drills. *Id.* These unsupported contentions must be disregarded. *Klein*, 2025 WL 33535, at *2. Plaintiff further alleges that Defendant Buss failed to correct deficiencies or dangerous conditions supposedly brought to her attention, referring to Defendant Buss's declaration. [ECF 145-1 at 34]. However, the referenced portion of Defendant Buss's declaration states that no fire issues or concerns had been raised at the dorm rep meetings—which reflects the contrary of what Plaintiff claims. *See id.*; [ECF 132-2 at ¶¶ 8-9]. Plaintiff has failed to offer evidence into the record that even implies Defendant Buss's referenced statements to be false.

Further, Section 1983 requires direct involvement, and the Court should disregard supervisory arguments. Defendant Buss cannot be said to have *all* the responsibilities at ISP, including those she is not tasked with, such as fire drills and oversight. [*See* ECF 132-8 at ¶¶ 4-6 (Declaration of Deb Taylor discussing her responsibility pertaining to fire drills as Safety Hazard Manager)]. Indeed, it is not proper to impute responsibility for the tasks of others onto Defendant Buss. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job"). Finally, Plaintiff's citation to *Sinn v. Lemmon* also does not help his cause. Much like the Court found in *Sinn*, Plaintiff has not presented evidence of a history or pattern of fires at ISP or definiens in fire safety at ISP such that a jury could infer knowledge of such onto Defendant Buss as the Deputy Warden. [*See* ECF 132-2 at ¶¶ 5-9]. There is no evidence on the record indicating that Defendant Buss is personally responsible for the development, establishment, or implementation of policies including those relating to fire safety.

In short, there is no evidence that Defendant Buss had any knowledge of a risk of substantial harm to Plaintiff prior to January 14, 2023. Again, "at the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and show what evidence he has that would convince a trier of fact to accept his version of events," *Olendzki*, 765 F.3d at 749. Here, Plaintiff has failed to put up evidence to support his Eighth Amendment claim against Defendant Buss. Contrary to Plaintiff's unsupported statements (ECF 145-1 at 32-34), there is no evidence that Defendant Buss was aware of any alleged widespread fires – in fact, there is no evidence of widespread fires at all – and there is no evidence that she was aware of any alleged deficiencies in fire safety protocol. Plaintiff's argument against Defendant Buss is that he merely suspects that she knew (or should have known) about alleged conditions that generate a fire risk because she was Deputy Warden, like the *Dwyer* defendant. [ECF 145-1 at 32-34]. However, without any evidence as support in the record, Plaintiff's unsupported inferences grounded on "only speculation or conjecture will not defeat a summary judgment motion."

*Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017), quoting *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

There is no evidence from which a reasonable jury could infer that Defendant Buss was deliberately indifferent to a substantial risk of harm to Plaintiff. Thus, Plaintiff's Eighth Amendment claim against Defendant Buss must fail and she is entitled to summary judgment in her favor.

**d. Defendant Wardlow is entitled to summary judgment.**

Defendant Douglas Wardlow is entitled to summary judgment. In his response brief, in the opening paragraph addressing the claims against the Supervisory defendants, Plaintiff even admits, "[t]o be clear, I am not claiming that Supervisor Defendants are liable because they approved, condoned, or turned a blind eye to the actions taken by Incident Defendants on January 14, 2023." [ECF 145-1 at 21]. Plaintiff, while initially disclaiming any attempt to do so, attempts to shift the issues and argues that Defendant Wardlow should be held liable merely based on his position.

At the outset, it must be established that Defendant Wardlow was not involved in the case *Dwyer v. Neal, et al.,* No. 3:18-CV-995-JD (N.D. Ind. closed Sept. 12, 2023). In any case, "[a] the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and show what evidence he has that would convince a trier of fact to accept his version of events," *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). Put differently, Plaintiff is burdened to show the Court that based on the record *in this case*—not any other case—that Defendant Wardlow is liable under the Eighth Amendment. *Id.* And Plaintiff's response itself demonstrates that this is a burden he is fundamentally incapable of satisfying.

Indeed, Plaintiff references findings relating to Correctional Major Nowatzke, a defendant in the *Dwyer* matter. *Dwyer v. Neal*, No. 3:18-CV-995 JD, 2022 WL 462017 at * 21 (N.D. Ind. Feb. 15, 2022). In essence, then, Plaintiff asks this Court to consider for Defendant Wardlow the evidence produced in an entirely separate matter. *See* (ECF 145-1 at 35-37). On the contrary, this Court can

only consider the record before it in *this* matter. *Logan v. City of S. Bend*, 564 F. Supp. 3d, 737-738 (N.D. Ind. 2021) ("The court can only consider admissible evidence in deciding a summary judgment motion."), *aff'd sub nom. Est. of Logan v. City of S. Bend, Indiana*, 50 F.4th 614 (7th Cir. 2022) (citation omitted). Therefore, Plaintiff's unsupported allegations regarding Defendant Wardlow's supposed responsibilities by reference to the separate *Dwyer* case should not be considered in ruling on the pending summary judgment motion. *See id.*; *see also* N.D. L.R. 56-1(e).

Likewise, the Court should disregard Plaintiff's unsupported (or outright contradicted) allegations regarding Defendant Wardlow's supposed knowledge, responsibilities, or conduct. *Id.*; *see* (ECF 145-1 at 35-37). Indeed, these unsupported statements must be disregarded. *Id.*; *see Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

Plaintiff cannot impute knowledge onto Defendant Wardlow merely because he was a supervisor. Plaintiff argues that Defendant Wardlow was aware of alleged deficiencies in fire safety protocol based on evidence of "daily meetings concerning incident reports, as well as the pervasiveness of the conditions"[20] – of which Plaintiff does not provide proper or admissible evidence – that Wardlow was allegedly aware of such supposed issues. [ECF 145-1 at 35]. Indeed, the record does not contain such evidence. Notably, Plaintiff cites to nothing in the record to support his baseless and conclusory statements beyond a loose reference to his *Verified Response to State Defendants' Statement of Material Facts*, *id.*, which is not a remotely sufficient citation to the record. *See* N.D. L.R. 56-1(e); *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1040 (7th Cir. 2021) (The Court is not "obligated

[20] In the *Dwyer* opinion, the Court states with respect to defendant Correctional Major Nowatzke that there is a genuine dispute as to whether he knew about a substantial harm to the prisoners, referencing "daily meetings concerning incident reports, as well as the pervasiveness of the conditions[.]" *Dwyer v. Neal*, 2022 WL 462017 at * 20. In the event that Plaintiff may be copying from the Dwyer opinion (which very well looks to be the case), the Court should disregard such arguments as that are not based on the record in this case. Indeed, Plaintiff should not be permitted to state the findings of a separate matter in support of this one, as to any of the Defendants.

... to assume the truth of a nonmovant's conclusory allegations on faith or to scour the record to unearth material factual disputes.") (citations and internal quotation marks omitted).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Plaintiff's baseless conclusory statement must be disregarded. "Summary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (citing *Bordelon*, 811 F.3d at 989). Again, the Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted).

Unlike Plaintiff's conclusory statements without support in the record, Wardlow's statements establish that he was and continues to be unaware of any conditions or issues in A Cell House that create a risk of fires, and that the dorm rep meetings he has attended do not indicate a risk of fire or safety issues related to fire. *See* (ECF 145-1 at 37); (ECF 132-10 at ¶¶ 8-11). And that portion of Defendant Wardlow's declaration is the only part of the record cited to in Plaintiff's argument briefing in opposition to Wardlow's summary judgment motion. (ECF 147-1 at 37-39). Indeed, there is no evidence that Defendant Wardlow has knowledge of any alleged issues with the electronic outlets in the cell house sparking on their own. [ECF 73 at 3 (response to Interrogatory No. 5)].

In short, there is no evidence that Defendant Wardlow had any knowledge of a risk of harm to Plaintiff. Again, "at the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and show what evidence he has that would convince a trier of fact to accept his version of events," *Olendzki*, 765 F.3d at 749. Here, Plaintiff has failed to provide the evidence for his Eighth Amendment claim against Defendant Wardlow. Contrary to Plaintiff's unsupported statements (ECF 145-1 at 35-37), there is no evidence that Defendant Wardlow was aware of any alleged widespread fires – in fact,

there is no evidence of widespread fires at all – and there is no evidence that Defendant Wardlow was aware of any alleged deficiencies in fire safety protocol. Plaintiff's argument against Defendant Wardlow is that he merely suspects that Wardlow knew or should have known about the alleged circumstances generating a fire risk because he was a Correctional Major like the *Dwyer* defendant. (ECF 145-1 at 35-37). However, without any evidence as support in the record, Plaintiff's unsupported inferences grounded on "only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC*, 858 F.3d at 1099, quoting *Herzog*, 742 F.3d 806. There is no evidence from which a reasonable jury could infer that Defendant Wardlow was deliberately indifferent to a risk of harm to Plaintiff. Again, Plaintiff cannot impute knowledge onto Defendant Wardlow merely because he was a supervisor.

Finally, Plaintiff's reliance on *Sinn v. Lemmon* is misplaced. (ECF 145-1 at 37 citing *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018). Much like the Court found in *Sinn*, Plaintiff has not presented evidence of a history or pattern of fires at ISP or definiens in fire safety at ISP such that a jury could infer knowledge of such onto Defendant Wardlow as Correctional Major. Thus, Plaintiff's Eighth Amendment claim against Defendant Wardlow must fail and he is entitled summary judgment in his favor.

**e. Defendant Taylor is entitled to summary judgment.**

Defendant Taylor is entitled to summary judgment. In his opening paragraph, Plaintiff lists Defendant Taylor's general duties as the ISP Safety Hazard Manager, which include conducting routine inspections, addressing and correcting problems in those inspections, supervising the prisoner firefighter program, and ensuring that fire drills are properly completed. [ECF 145-1 at 37]. Plaintiff then claims that he has "presented sufficient evidence to support a finding that there were deficiencies in each of these areas." [*Id*.]. Yet, Plaintiff's response brief section concerning Defendant Taylor is filled with baseless, conclusory statements that lack any evidentiary support. *Balderston*, 328 F.3d at 320

(when the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues). As such, the Court should disregard Plaintiff's baseless, conclusory statements and any associated arguments. *Sommerfield*, 863 F.3d at 649 ("[s[ummary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough."). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant*, 870 F.3d at 573−74. Plaintiff has failed to provide any evidence that Defendant Taylor had actual knowledge of conditions in A Cell House that created a substantial risk of harm to him prior to the January 14, 2023 fire.

First, Plaintiff claims that Defendant Taylor "was responsible for coordinating training functions and training staff." [ECF 145-1 at 37]. However, Plaintiff failed to cite any evidence to support his contention about Defendant Taylor's responsibility for training staff. [*Id.*]. The Court should disregard Plaintiff's alleged responsibilities for Defendant Neal due to a lack of evidentiary support. *Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment). Plaintiff then goes on to make several unsupported statements regarding Defendant Taylor's alleged job responsibilities, specifically concerning fire safety training and procedures. [ECF 145-1 at 37, 38]. The Court should disregard Plaintiff's contentions regarding Defendant Taylor's alleged job responsibilities because they lack any evidentiary support. *Klein*, 2025 WL 33535, at *2. Next, Plaintiff states that "training around fire responses was deficient in multiple areas." [ECF 145-1 at 38]. However, correctional staff's response to the fire on January 14, 2023 is not at issue pursuant to the Court's Screening Order. [ECF 11 at 4-7]. And in any event, Plaintiff does not elaborate how the fire responses were deficient. Plaintiff's conclusory statement without a factual basis or evidentiary support is not enough on summary judgment. *Sommerfield* v. City of Chicago, 863 F.3d 645, 649 (7th Cir. 2017) (conclusory statements not grounded on specific facts not enough). Thus, Plaintiff's

contentions about fire training and staff response should be disregarded as they are immaterial to the liability claims against State Defendants. *Anderson,* 477 U.S. at 248.

Second, Plaintiff claims that Defendant Taylor "learned that an electrical outlet had randomly sparked and started a fire, yet took no action to remedy this issue." [ECF 145-1 at 38]. To support his assertion, Plaintiff cites to an incident report from October 9, 2022 by Lieutenant Jones and Sergeant Mitchell concerning a small fire in the Sergeant's Office. [ECF 115-1 at 72-73]. At the outset, these incident reports are inadmissible hearsay and contain hearsay within hearsay as discussed above, *supra* Section I.C(3) (above). *See Gunville*, 583 F.3d at 985. Regardless, Plaintiff's assertion that this fire notified Defendant Taylor about a time where "an electrical outlet had randomly sparked" is a misrepresentation of the event depicted in the incident reports. Plaintiff conveniently does not cite the incident report from Captain Gillespie that also pertains to the small fire in the Sergeant's Office on October 9, 2022. [ECF 115-1 at 70]. In this incident report, it states that the cause of the fire was determined to be "a coffee pot that was left on and unattended." [*Id*.]. Importantly, there is nothing in any of the incident reports from October 9, 2022 that suggests the fire was caused by an electrical outlet sparking. [*Id.* at 70, 72, 73]. As such, Plaintiff cannot use these incident reports to support his argument that electric outlets randomly spark at ISP, let alone that Defendant Taylor was aware of this alleged issue. Plaintiff's citation to Offender Taylor's declaration also does not show that she had knowledge of the alleged randomly sparking outlets at ISP. [ECF 145-2 at ¶¶ 7-8]. Offender Taylor's suggestion for installing circuit breakers in the electrical outlets does not impute knowledge on Defendant Taylor about the alleged fires that occur from electrical outlets sparking.[21] [*Id*.]. Plaintiff cannot use the incident reports from October 9, 2022 or paragraphs seven and eight of Offender

[21] The entire argument about having electronic circuit breakers by electrical outlets is unreasonable. It is common sense that in households, there are no circuit breakers next to all electronic outlets. The location of a circuit breaker does not create a substantial risk of harm.

Taylor's declaration to show that Defendant Taylor had knowledge of the alleged electrical outlets randomly sparking at ISP.

Plaintiff further alleges that Defendants Neal, Buss, Wardlow and Taylor "lied under oath" by claiming that "the only issues I have come across [regarding outlets sparking] is the inmates themselves tampering with the electrical outlets." [ECF 145-1 at 38]. Although he mentions Defendants Neal, Buss, and Wardlow as well, Plaintiff's citation is to Defendant Taylor's interrogatory responses. [ECF 110 at 3]. Regardless, Plaintiff believes that Defendants Neal, Buss, Wardlow and Taylor lied because his evidence "shows that the outlets have randomly sparked and started fires without any human interaction in areas not accessible by prisoners." [ECF 145-1 at 38]. To support his contentions, Plaintiff cites to a series of incident reports. [ECF 115-1 at 1, 20, 70, 72, 73]. Once again, these incident reports are inadmissible hearsay and contain hearsay within hearsay. *See Gunville*, 583 F.3d at 985 ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). *See also*, *supra* Section I.C(3) (discussing why these incident reports are not admissible). Also as discussed above, Plaintiff cannot use the incident reports concerning the small fire in the Sergeant's Office on October 9, 2022 because the cause of the fire was determined to be "a coffee pot that was left on and unattended." [*Id.* at 70, 72, 73]. Plaintiff also cannot rely on the incident report from August 30, 2022 by Sergeant Stovall because it demonstrates that the water fountain was plugged into a faulty socket, which caused sparks and smoke. [ECF 115-1 at 1]. Finally, Plaintiff cannot use the incident report from August 6, 2022 by Lieutenant Darschewski to support his contention that Defendants Neal, Buss, Wardlow and Taylor lied under oath. [ECF 115-20]. This report references a "small fire that started at an electrical outlet near the water fountain." [*Id.*]. Yet, nowhere in this report does it indicate the cause of this fire or that there was an "electrical outlet randomly spark[ed]." [*See id.*]. None of these incident reports show that "electrical outlets randomly spark" out of nowhere as Plaintiff contends,

let alone that Defendants Neal, Buss, Wardlow, and Taylor had knowledge of the alleged issues. [*See* ECF 115-1 at 1, 20, 70, 72, 73].

Next, Plaintiff claims that "Defendant Taylor knew about widespread deficiencies in ISP's fire safety and emergency protocols" and "aided and abetted them." [ECF 145-1 at 38]. Again, Plaintiff does not cite to any evidence to support his contention. [*Id.*]. Plaintiff argues that the "daily meetings and dorm rep meetings she attended, the incident reports she reviewed, and the pervasiveness of the issues make it clear that she knew about the conditions at ISP." [*Id.*]. Notably, Plaintiff cites to nothing in the record to support his baseless and conclusory statements. [*Id.*]. When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Plaintiff's baseless conclusory statement must be disregarded. *Klein*, 2025 WL 33535, at *2 (Court disregarding unsupported factual statements on summary judgment).

Plaintiff contends that Defendant Taylor "condoned and facilitated" deficiencies and dangerous conditions that were brought to her attention, such as

- "conducting improper fire drills—where the drills were conducted under the guise of chow and recreation lines." [ECF 145-1 at 38-39].
- "not sweeping the cellhouses during the faux fire drills." [*Id.* at 39].
- "staff was allowed to cheat on fire-safety questionnaires." [*Id.*].
- "failing to conduct fire drills at night." [*Id.*].
- "hid instances where the unreported inoperable or empty fire extinguishers on a unit." [*Id.*].
- "issues with delays altering, activating, and releasing prisoner firefighters." [*Id.*].

Plaintiff argues the above-listed actions of Defendant Taylor but fails to provide any evidentiary support. As such, the Court should disregard these unsupported contentions. *Sommerfield*, 863 F.3d at

649 ("[s]ummary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts' are not enough."). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant*, 870 F.3d at 573–74.

Plaintiff alleges that "[d]espite knowing about each of these deficiencies, Defendant Taylor did not make any alterations to require live fire drills during the night shift, did not change how inspections were performed, and did not conduct any … inspection of the electrical systems inside prisoner's cell." [ECF 145-1 at 39]. Plaintiff also claims that Defendant Taylor "did nothing after learning about the delays with the prisoner firefighters." [*Id.*]. Critically, Plaintiff fails to provide *any* evidence that shows that Defendant Taylor had "actual, not merely constructive knowledge" of his alleged deficiencies prior to January 14, 2023. *See Farmer*, 511 U.S. at 837.

Additionally, Plaintiff argues that "Defendant Taylor knew about these issues and deficiencies with training and the serious risk it posed." [ECF 145-1 at 39]. Not only does his contention lack any factual or evidentiary basis, but it is also unsupported by the record as well. From the time that Defendant Taylor was promoted to Safety Hazard Manager to January 14, 2023, six fire drills were conducted by either her or the ISP fire department of A Cell House. [ECF 132-6 at 5-16]; [ECF 162-1 at ¶ 18]. Out of these six fire drills, Defendant Taylor conducted one of the fire drills, which was a full evacuation performed during the daytime. [*See* ECF 132-6 at 9-10]. The ISP fire department performed the other five dire drills for A Cell House. [ECF 132-6 at 5, 7, 11, 13, 15]. There are times when verbal or "mock" fire drills are run instead of evacuating a cell house due to lockdowns or other safety and security concerns. [ECF 162-1 at ¶ 16]. In the event of verbal or "mock" fire drills, generally two inmate firefighters will go to each housing unit and go through questionnaires on fire safety procedures with custody staff. [*Id.*]. Even if Defendant Taylor does not conduct the drill, she would still review the fire drill evacuation forms to verify that the drills were completed. [*Id.*].

Plaintiff alleges that Defendant Taylor "was in charge of training and knew that she cheated for staff in the fire questionnaires." [ECF 145-1 at 40]. However, the fire safety questionnaires, which quiz custody staff on fire safety, equipment, and evacuation procedures, are not pass/fail or the kind of test where custody staff receive "answers." [ECF 162-1 at ¶ 16]. If custody staff get a question incorrect, the inmate firefighters or Ms. Tayloe provide the correct answer and explanation as a teaching moment to ensure that staff are knowledgeable about the procedures. [*Id.*] Plaintiff cites to *Haley v. Gross* to show that "actual knowledge of a substantial risk of harm can be inferred by the tier of fact from the obviousness of the risk." 86 F.3d 630, 641 (7th Cir. 1996). However, Plaintiff has failed to provide any evidence that Defendant Taylor knew of an obvious risk that created a substantial risk of harm. Similarly, Plaintiff cannot rely on *Sinn v. Lemon* because there is no evidence that Defendant Taylor was aware of a "systematic lapse in enforcement' of policy" prior to January 14, 2023. 911 F.3d 412, 423 (7th Cir. 2018)

Thus, Plaintiff's Eighth Amendment claim against Defendant Taylor fails, and she is entitled to summary judgment in her favor.

**f. Defendant Becher is entitled to summary judgment.**

Defendant Gordon Becher is entitled to summary judgment. In his response brief, in the opening paragraph addressing the claims against the Supervisory defendants, Plaintiff even admits, "[t]o be clear, I am not claiming that Supervisor Defendants are liable because they approved, condoned, or turned a blind eye to the actions taken by Incident Defendants on January 14, 2023." (ECF 145-1 at 21). Plaintiff, while initially disclaiming any attempt to do so, attempts to shift the issues and argues that Defendant Becher should be held liable merely based on his position.

Plaintiff mischaracterizes Becher's statements in an attempt to support non-existent facts. In Plaintiff's response brief, he alleges that Defendant Becher is responsible for "conducting routine inspections, addressing and correcting problems found in those inspections, supervising the prisoner

firefighter program, and ensuring that fire drills were run properly," citing to paragraphs 5, 10, and 13 of his declaration. [ECF 145-1 at 41]. However, these paragraphs do not support Plaintiff's allegations against Defendant Becher. [*See* ECF 132-9 at 1-2]. Indeed, Defendant Becher states that he is the Director of Fire Risk Management, that he oversees the fire departments within IDOC facilities and addresses issues that may arise, *id.* at 1, ¶ 5, that he provides trainings to Taylor to give to the fire department, and assists Taylor in coordinating in-person trainings, *id.* at 2, ¶ 10, and further, that he acts as a liaison between IDOC facilities and construction services, *id.* at 2, ¶ 13. Thus, Plaintiff mischaracterizes Becher's tasks and responsibilities.

Plaintiff makes additional mischaracterization of Defendant Becher's declaration. For example, Plaintiff claims that Defendant Becher has "authority" to relocate electrical outlets, remove "countless layers of flammable paint" from the cell walls, have ABC fire extinguishers "strategically located" on each range, and replace outlets with new ones that have circuit breakers, citing again to paragraph 13 of Becher's declaration. [ECF 145-1 at 41]. Again, paragraph 13 merely states that Defendant Becher is the Director of Fire Risk Management and acts as a liaison between the facilities and construction services. [ECF 132-9 at ¶ 13]. Once again, Plaintiff attempts to use Becher's statements to indicate unrelated facts—including that there were "countless layers of flammable paint," which is unsupported.

Plaintiff further mischaracterizes the declaration by claiming Defendant Becher "had the authority to address or correct the deficiencies in ISP's safety protocols," and references paragraphs 5, 10, 11, and 20 of Becher's declaration. [ECF 145-1 at 41 citing ECF 132-9]. Once again, a simple reading of Becher's actual statements shows that Plaintiff's assertions are unsupported—including his vague statement regarding undefined "deficiencies." Defendant Becher stated in paragraph 11 that he was not typically involved in the day-to-day operations at ISP, (ECF 132-9 at 2, ¶ 11), and in paragraph

20 that maintenance of fire extinguishers and frequency of fire drills are conducted at the facility level, *id.* at 3, ¶ 20—statements that, if anything, detract from Plaintiff's assertions.

The Court should disregard Plaintiff's unsupported (or outright contradicted) allegations regarding Defendant Becher's supposed knowledge, responsibilities, or conduct. *See* (ECF 145-1 at 41-43). Indeed, these unsupported statements must be disregarded. *Id.*; *see Klein*, 2025 WL 33535 at *2 (Court disregarding unsupported factual statements on summary judgment). *See also Mace*, 2022 WL 2644118 at *2 (same).

Indeed, the Court should rely on the properly supported facts concerning Defendant Becher job responsibilities and duties at the Director of Fire Risk Management, which shows he was not typically involved in ISP's daily operations, that he was not present at ISP for the incident, that he was informed of the incident by his boss but was not required to go to the facility due to the State Fire Marshall's involvement, that he is not typically involved with fire extinguisher maintenance and the frequency of fire drills at ISP, that he was and continues to be unaware of any A Cell House conditions that create a fire risk, and that he has never been involved in dorm rep meetings discussing fire safety.[ECF 145-1 at 41-42]; [ECF 132-9 at ¶¶ 5, 10, 11, 13, 16-18 20, 21-22].

Further, the record contradicts Plaintiff's allegation that Defendant Becher was aware of issues with electrical outlets sparking. [*See id.* at 42]. Pointedly, there is no evidence that Defendant Becher has actual knowledge of any issues with the electronic outlets in the cell house sparking on their own .[ECF 70 at 4) (response to Interrogatory No. 5)]. Plaintiff's citations do not show the contrary. [*See* (ECF 145-1 at 42]; [ECF 145-2 at pp. 6-11, Plaintiff's Exhibit 1 at ¶¶ 19-21, 25-27, 32, 36-37)]. For the reasons noted at the start of this brief, most of Offender Pierre Taylor's declaration statements must be stricken and disregarded on summary judgment, *see supra*, Section I.B (above). Specifically, non-party Pierre Taylor cannot testify as to Defendant Becher's personal knowledge of the supposed fire risk-creating issues. [*See id.* at ¶¶ 36-37]. Offender Taylor's layperson testimony as to what he

thinks supposed fire safety issues at ISP were, *see id.* at ¶ 36, is not sufficient on summary judgment to show that such issues existed—nor is hearsay as to what firefighters or other persons supposedly told Becher regarding such supposed issues, which should not be considered. *Id.*; *see also* Fed. R. Evid. 702; *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) ("A party may not rely on inadmissible hearsay to avoid summary judgment.") (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997)). In fact, there is no admissible evidence that Defendant Becher had "actual knowledge of specific facts that would support an inference that" there were deficiencies in ISP's fire safety and protocols. *See Chatham v. Davis*, 839 F.3d 679 (7th Cir. 2016). And not even Pierre Taylor identifies anything specifically about what these alleged ISP's fire safety and protocol deficiencies were and what the supposed "proper" way should be. (*See* ECF 145-2). Similarly, there is no evidence that "Becher received reports that there were problems with (1) outlets randomly sparking and causing fires, (2) activating and releasing prisoner firefighters, and (3) staff being poorly trained and not performing fire safety checks or meaningful dire drills" as Plaintiff contends (ECF 145-1 at 41-42). There is no evidence of what these "reports" are and there is no evidence that Defendant Becher has knowledge that these alleged "problems" created a substantial risk of harm to Plaintiff. *See Chatham*, 839 F.3d 679.

In short, there is no evidence that Defendant Becher had any knowledge of a risk of harm to Plaintiff. Again, "at the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and show what evidence he has that would convince a trier of fact to accept his version of events," *Olendzki*, 765 F.3d at 749. Here, Plaintiff has failed to provide evidence for his Eighth Amendment claim against Defendant Becher. Contrary to Plaintiff's unsupported statements (ECF 145-1 at 41-43), there is no evidence that Defendant Becher was aware of any alleged widespread fires – in fact, there is no evidence of widespread fires at all – and there is no evidence that Defendant Becher was aware of any alleged deficiencies in fire safety protocol. Plaintiff's argument against Defendant Becher

is that he merely suspects that Becher knew or should have known about the alleged circumstances generating a fire risk because he was Director of Fire Risk Management. (ECF 145-1 at 41-43). However, without any evidence as support in the record, Plaintiff's unsupported inferences grounded on "only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC*, 858 F.3d at 1099, quoting *Herzog*, 742 F.3d at 806. There is no evidence from which a reasonable jury could infer that Defendant Becher was deliberately indifferent to a risk of harm to Plaintiff.

Finally, Plaintiff's reliance on *Sinn v. Lemmon* is misplaced. [ECF 145-1 at 42 citing *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018)]. Much like the Court found in *Sinn*, Plaintiff has not presented evidence of a history or pattern of fires at ISP or definiens in fire safety at ISP such that a jury could infer knowledge of such onto Defendant Becher. And, further, Ms. Becher has no personal involvement here and cannot be held liable either directly under a theory of respondeat superior because of his title. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (Section 1983 creates a cause of action based on personal liability and liability does not attach unless the individual defendant caused or participated in the constitutional deprivation). Accordingly, Plaintiff's Eighth Amendment claim against Defendant Becher fails, and he is entitled to summary judgment in his favor.

No reasonable jury could determine that the High-Ranking Official Defendants had actual knowledge of an impending, easily preventable harm prior to January 14, 2023 that created a substantial risk of harm to Plaintiff. Therefore, the High-Ranking Official Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims.

**C. State Defendants are entitled to Qualified Immunity.**

Plaintiff fails to show that any State Defendant violated a clearly established right of his. First, as shown by State Defendants' Reply to Statement of Material Facts in Support of Motion for Summary Judgment and Response to Plaintiff's Additional Material Facts, there exists no genuine issue of material fact and State Defendants are entitled to judgment as a matter of law. And while their

Eighth Amendment argument further shows that they are not liable, State Defendants are also entitled to the shield of qualified immunity. The Supreme Court has continually reiterated that "clearly established law should not be defined at a high level of generality[,]" and while a case directly on point is not required, "the clearly established law must be *particularized* to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations and internal quotation marks omitted) (emphasis added) Plaintiff is unable to meet his burden to show that either prong of the qualified immunity inquiry can be satisfied in this case as to Defendants. *See Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). Specifically, Plaintiff is unable to show that there was a clearly established right, and that Defendants violated said right.

**1. There exists no genuine issue of material fact preventing summary judgment by way of qualified immunity.**

Plaintiff argues there are issues of fact precluding summary judgment by way of qualified immunity, where he cites to the matter *McGuire v. Dykstra*, No. 3:18-CV-197-DRL-MGG, 2020 WL 4735264 (N.D. Ind. Aug. 14, 2020) (ECF 145-1 at 50). In that case, which involved the 2017 fire incident at ISP, the custody staff were sued for allegedly denying the plaintiff medical care, where the plaintiff inhaled smoke from the fire and was not seen by medical personnel until 6 days following the incident. *McGuire*, 2020 WL 4735264 at * 1-2 (citations omitted). There, when defendant Captain Dykstra ordered the 500 block of the cell house evacuated, the order was misunderstood and all the cells in the unit were unlocked—resulting in chaos. *Id.* Inmates started a second fire and broke windows, two officers were attacked, and the door was locked "to prevent the disturbance from spreading outside the cellhouse." *Id.* at * 2.

It took time to restore order—the fire began around 9:45 p.m., and an emergency count was eventually called at 12:52 a.m., with "med lines" being formed by 4:45 a.m. for inmates to obtain their previously prescribed medications. *Id.* at *1-3. Inmates were evacuated out of the unit, and eventually returned to the unit in groups after it had been secured. *Id.* at 2. The plaintiff sought medical care

following the evacuation, but was ultimately told by defendant Captain Dykstra that he would not call the medical department as he was securing offenders. *Id.* at * 1-2. The plaintiff had asthma, and his medical records reflected that 6 days after the fire, "wheezing could be heard in both his left and right lungs, and his throat was erythematous (abnormally red)." *Id.* at * 2. When he was eventually seen, breathing treatment was administered for him and he was prescribed Prednisone for his condition. *Id.* at * 2-3. Accordingly, due to issues of fact regarding the seriousness of his condition and the reasoning for the 6 days between the incident and the plaintiff's eventual receipt of medical care, the court there determined that the defendants were not entitled to summary judgment. *Id.* at * 3-4.

The facts of *McGuire* are different from this case. The record in this case shows that as Griffin was existing his cell house, he does not know if anyone heard him and when requested medical attention. ECF 132-1 at pp. 52, 58. Once Mr. Griffin returned to his cell, he admits he did not have any other conversations with Officer Cross, Officer Crockett, Sgt. Walton, Lt. Smith-Robinonson, Lt. Koen, or Ms. Mayes [ECF 132-1 at 62:14-25, 63:1-4, 71:19 – 72:18]. Once Mr. Griffin returned to his cell, he did not submit any type of healthcare request form either. [*Id.* at 64:25- 65:2]. At some point after the lockdown, Plaintiff's symptoms went away. [Ex. A at 102:5-9]. But there is no evidence that Mr. Griffin ever requested medical assistance from any defendant after he returned to his cell. Thus, Plaintiff's reliance on *Griffin* is also misplaced. In any case, as explained below, Plaintiff has failed to identify a clear right supposedly violated by any one of State Defendants. *See Abbott, Ill.*, 705 F.3d at 713.

**2. There was not a clearly establish right violated.**

Plaintiff presents a number of cases in his response to State Defendants' qualified immunity argument, but not one of those cases shows that a clearly established right was violated by any one of State Defendants. Indeed, it is not enough for Plaintiff to point to cases he believes have some degree of similarity but instead, he must point to a clearly established law that is *particularized* to the facts of

the case. *White*, 580 U.S. at 79. Again, as to the High-Ranking Official Defendants, the only claim pending against them is for deliberate indifference to an alleged risk of harm—not as to his medical treatment, which is what concerns the Custody Defendants. [ECF 11 at 11-12]. Plaintiff fails to make a cogent argument as to why any one of the cases he cites shows that a clearly established right was violated and, thus, fails to meet his burden in response to Defendants' qualified immunity argument. Nonetheless, not one of the cases he cites is particularized to the matter before the Court.

First, the *Alvarado* matter does not show a clearly established right. There, the plaintiff had "severe chronic asthma," with records indicating that he was allergic to smoke and had been hospitalized multiple times, including emergency room trips for asthma-related problems. *Alvarado v. Litscher*, 267 F.3d 648, 649 (7th Cir. 2001). While the plaintiff was housed in a non-smoking unit, he was nonetheless exposed to ambient tobacco smoke in the unit. *Id.* at 653. Ultimately, the Court of Appeals for the Seventh Circuit found that in light of the Supreme Court's ruling in *Helling*, the defendants should have known that failure to enforce smoking rules resulting in an inmate with severe asthma being exposed to ambient smoke violated his Eighth Amendment rights. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 28, 36 (1993) (finding deliberate indifference to medical need where plaintiff's cellmate was allowed to smoke 5 packs of cigarettes a day). Clearly, the *Alvarado* matter is not particularized to the deliberate indifference to medical need claim here ,where the concern is Plaintiff's medical care in the immediate aftermath of a cellhouse fire. And the remainder of cases, Plaintiff referenced do not show a clear violation as *Helling* did for the *Alvarado* case.

Indeed, the *Howell* case, seemingly only cited to for its restatement of the qualified immunity rule, is a Fourth Amendment matter where the plaintiff alleged that police officers aggravated a pre-existing shoulder condition following a stop. *Howell v. Smith*, 853 F.3d 892, 894-95 (7th Cir. 2017). The *Reichle* matter referenced in the *Howell* decision likewise does not show a clearly established right in this case. In *Reichle*, the plaintiff alleged First and Fourth Amendment violations from an arrest and

search after the plaintiff had approached, chastised, and eventually touched a former Vice President of the United States. *Reichle v. Howards*, 566 U.S. 658, 660-62 (2012). Needless to say, as with the *Howell* case, the facts are not remotely proximate to those before the Court. Again, Plaintiff has failed to show a clearly established right.

Next, the *Walker* case Plaintiff cites fails to show a clearly established right. There, the plaintiff sued prison medical staff regarding his treatment after a heavy steel drawer fell from the bunk above him in his cell, striking his hand and resulting in a deep cut and injury to a joint in his hand. *Walker v. Benjamin*, 293 F.3d 1030, 1033-34 (7th Cir. 2002). He was seen by medical staff 2 days after the incident. *Id.* at 1034. The *Walker* court found genuine issues of material fact precluding summary judgment by way of qualified immunity, as to whether medical staff intentionally refused to treat the plaintiff's pain by denying his prescribed pain medication while he was recovering from hand surgery necessitated by the above-described injury, and whether denial of medication was based upon their good-faith belief that the plaintiff merely was trying to get high with narcotic painkiller. *Id.* at 1039-40. Thus, *Walker* does not help Plaintiff meet his burden here.

The *Gonzalez* case does not show a clearly established right either. In that case, the plaintiff alleged violations of his Fourth Amendment rights for being unlawfully arrested and detained, and for the use of excessive force to effectuate the arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Thus, *Walker* and *Gonzalez* appear to be cited for their restatement of rules, and in any case, fail to show facts highly comparable to conduct in relation to the January 14, 2023 fire incident (or alternatively show that a genuine issue of fact exists here).

As outlined above in the prior sub-section, comparison with the *McGuire* case demonstrates that a genuine issue of material fact does not exist here—and that case does not show a clearly established right either. *See McGuire*, 2020 WL 4735264 at * 1-4 (citations omitted). Indeed, the *McGuire* court did not find that any of the plaintiff's rights were violated, or that there was a clearly established

right with respect to the fire or related medical treatment. *Id.* Rather, the *McGuire* court determined that issues of fact precluded summary judgment—specifically as to the severity of the plaintiff's condition and the cause for the delay in his medical treatment. *Id.* at * 4. Further, that matter dealt solely with custody staff defendants as to a deliberate indifference to medical need claim. *See id.* Therefore, it cannot be said that *McGuire* could ever be construed as relating to claims of deliberate indifference to a serious risk of harm and, as to the Custody Defendants, it is shown above not only that the facts are highly distinguishable and thus not particularized, but also that issues of fact do not exist as they were found to in *McGuire*. *See id.*

Turning to *Dwyer*, Plaintiff is mistaken in claiming that the *Dwyer* court denied a "near identical" qualified immunity argument. *See* (ECF 145-1 at 45). Plaintiff fails to elaborate as to the similarities between the *Dwyer* case and this one. *Dwyer* did not involve claims of Eighth Amendment deliberate indifference to medical needs from the smoke resulting from the fire. Thus, *Dwyer* is distinguishable as to the Eighth Amendment claim for the Custody Defendants. Critically, the *Dwyer* plaintiff is the personal representative of Joshua Devine—the inmate who died in the April 7, 2017 fire at Indiana State Prison. *Dwyer v. Neal*, No. 3:18-CV-995 JD, 2022 WL 462017 at * 1 (N.D. Ind. Feb. 15, 2022). Therefore, the *Dwyer* decision cannot be construed as showing a clearly established right with respect to alleged smoke inhalation resulting from a cellhouse fire.

In *Dwyer*, the plaintiff was housed in **B Cell House** at Indiana State Prison. *Id.* At about 9:00 p.m. on the date of the incident, after a prisoner count had concluded and inmates in the unit were locked in their cells, the plaintiff's television caught on fire in his cell. *Id.* at * 2. Inmates yelled to get staffs' attention at 9:15 p.m., and it took 15 minutes for the custody staff defendants to take any action *Id.* Custody staff did not call in the fire code until 30 minutes after the inmates began to yell. *Id.* The shift supervisor and assistant shift supervisor defendants, who were responsible for ensuring the activation of prisoner firefighters during a fire, failed to take any affirmative steps to direct the fire

response after being contacted by custody staff until about 13 minutes later at 9:58 p.m., when an evacuation was called and prisoner firefighters were activated. *Id.* at * 3. There were delays of many minutes for the prisoner firefighters, who were housed in a different unit, to be released from their unit, retrieve the necessary equipment and ultimately arrive at B Cell House. *Id.* at * 4. And the only firefighter in B Cell House was not released until the whole unit was evacuated. *Id.*

In *Dwyer*, "[t]he Court found a genuine dispute about whether there was a substantial risk of harm, whether the defendants had knowledge of the substantial risk of harm, and whether the Defendants disregarded that risk of harm[.]," and that a reasonable person would know that they could face liability for deliberate indifference to harm posed by fire hazards and related protocol and policy. *Id.* at 22. However, the qualified immunity argument here clearly is distinguishable, and State Defendants are entitled to qualified immunity.

Here, the fire signal was immediately called after staff heard the ACH go off and inmates yelling. [ECF 132-3 at ¶ 20]; [ECF 132-11 at ¶¶ 9-10]; [ECF 93 at 5]. Custody staff could not quickly unlock Mr. Smith's cell door due to the intensity of the fire. [ECF 132-3 at ¶ 27]; [ECF 132-11 at ¶ 16]. First responders arrived, followed by the prisoner firefighters. [ECF 132-11 at ¶¶ 19-20]; [ECF 132-5 at ¶¶ 7-9, 13]. Fire extinguishers were used to extinguish the flames. *See id.*; [ECF 132-3 at ¶¶ 29, 31]; [132-11 at ¶¶ 16-17]. Plaintiff was released from his cell, when he and the other inmates were released pursuant to an evacuation order. [ECF 132-1 at 48:2-9]; [ECF 132-4 at ¶ 14]. Simply, Plaintiff has failed to offer into the record evidence showing that ISP's fire response was insufficient—in stark contrast to *Dwyer*. And, again, Plaintiff is not the person who passed from the fire—he merely alleges that he inhaled smoke generated by it. The *Dwyer* decision is silent as to smoke inhalation or related medical treatment in relation to qualified immunity. *Dwyer*, 2022 WL 462017 at * 22.

The *White* and *Rabb Ra Chaka* cases cited in the *Dwyer* decision, *id.*, and Plaintiff's response brief (ECF 145-1 at 45) also do not show a clearly established right. In the *White* matter, the plaintiff

had accidentally set a fire in his own cell by falling asleep while smoking a cigarette, at a time where the plaintiff's cellhouse was undergoing extensive renovation, the smoke activation system was not operation for the plaintiff's location, and the smoke evacuation fans had been removed. *White v. Cooper*, 55 F. Supp. 2d 848, 851-52 (N.D. Ill. 1999). The *White* court determined that qualified immunity was not available to the sole defendant Warden Cooper in light of the non-functional fire safety and prevention system. *Id.* at 852, 858. *White* only pertains to deliberate indifference to a serious risk of harm—and thus cannot apply to the Custody Defendants here. And it does not how a clearly established right for the High-Ranking Official Defendants either, as White was a victim of the fire he himself set in his cell. *See id.* He is not an alleged victim of smoke inhalation from a fire outside his cell. *See id.* And, again, Plaintiff has failed to offer into the record evidence showing that ISP's fire response here was deficient—let alone non-functional like it was in White's unit in Illinois. *See id.*

In the *Rabb Ra Chaka* case, a fire broke out in an absent occupant's cell containing that occupant's art materials, and that cell was directly below the plaintiff's cell. *Rabb Ra Chaka v. O'Leary*, No. 88 C 3753, 1989 WL 56874 at * 1 (N.D. Ill. May 24, 1989). Rather than addressing the fire, the cellhouse officers taunted the prisoners and laughed at the circumstances despite the inmates' cries for help. *Id.* Fire extinguishers and the cellhouse locking system were defective—resulting in the prison locksmith being summoned to dismantle the inmate's doors at a time the cellhouse was filled with smoke and fumes. *Id.* at * 2. When plaintiff was eventually let out of his cell, he was directed to take a fire exit that turned out to be locked, which was then crowded by other inmates. *Id.* The inmates were then instructed to run past the fire to another exit, but in doing so the plaintiff fell and was run over by his fellow inmates before eventually escaping. *See id.*

As with *White*, *Rabb Ra Chaka* only pertains to deliberate indifference to a serious risk of harm—and thus cannot apply to the Custody Defendants here. *Id.* at * 3. It also does not show that the High-Ranking Custody Defendants violated a clearly established right. Indeed, in rejecting

defendants' qualified immunity defense there, the court reasoned that "it takes no bold construction of the Eighth Amendment to determine that guards may not deliberately permit (or take advantage of) dangerous conditions to threaten the physical or psychological health of inmates," and further that the court could not accept the defense at the time "[w]ithout benefit of a factual record." *Id.* at 5. Clearly, the *Rabb Ra Chaka* court's decision is not that defendants such as High-Ranking Official Defendants are in violation of a clearly established right in each instance a fire occurs in their facility. *See id.* On the contrary, the factual record before this court including as to ISP's fire response demonstrated on the day of the January 14, 2023 fire makes the present matter ripe for summary judgment as to qualified immunity and otherwise.

And not one of the remaining cases cited by Plaintiff in response to State Defendants' qualified immunity argument contradicts this. *See Brown v. Budz*, 398 F.3d 904, 907-08 (7th Cir. 2005) (plaintiff alleged failure to protect claim where he was beaten by other inmate in unsupervised dayroom); *see City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 142 S. Ct. 9, 14 (2021) (qualified immunity granted where estate of hammer-wielding fatally shot suspect alleged excessive force against officers); *see Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (summary judgment granted for defendants as to excessive force and failure to provide medical care claims where off-duty sheriff's deputy fatally shot attempted robbery suspect); and, *see Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 3195 (1984) (suit alleging destruction of property against prison officer pursuant to unreasonable shakedown).

Plaintiff has failed to meet his burden on summary judgment as to qualified immunity. He has not shown the Court any case law that indicates that he had a clearly established right to not be exposed to smoke from a fire started in another inmate's cell, nor has he demonstrated that any conduct of State Defendants—Custody or High-Ranking Official— was in violation of such a right. Instead, State Defendants have provided ample evidence to show that ISP was prepared for and properly responded to the January 14, 2023 fire. Additionally, Plaintiff has provided no evidence reflecting that he received

insufficient healthcare in response to any supposed injury. Accordingly, State Defendants are entitled to qualified immunity and thus summary judgment is warranted in their favor. *See White*, 580 U.S. at 79 (citations omitted).

**III. Sanctions are not warranted as State Defendants properly moved for summary judgment.**

State Defendants' Motion for Summary Judgment was filed in good faith and, thus, sanctions are not warranted. State Defendants moved for summary judgment in good faith, relying on admissible and undisputed evidence.

Plaintiff's response brief alleges that State Defendants "moved for summary judgment despite being aware a genuine issue of material fact existed." [ECF 145-1 at 48]. However, this section of the response brief makes no citation to the record—nor does Plaintiff make any specific, cogent legal argument as to what conduct he believes to be sanctionable, aside from his opinion on the merits of the summary judgment motion. *Id.* Federal Rule of Civil Procedure 11, the sanctions rule governing filings "is principally designed to prevent baseless filings." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002) (citation omitted). Indeed, "[s]anctions will be imposed if counsel files a complaint with improper motives or without adequate investigation[;]" however, "even 'objectively frivolous filings support but do not compel an inference of unreasonable investigation.'" *Id.* (citations omitted).

State Defendants' Motion for Summary Judgment (ECF 131) was brought in good faith and is not at all an objectively frivolous filing. Unlike Plaintiff, who presents inadmissible evidence and filed an affidavit riddled with conclusory statements and statements that must be barred by the sham affidavit rule as noted above (*supra*, Section I.B), State Defendants have presented with their dispositive motion, exhibits, and good faith arguments in support of their motion. Defendants' filings show that no genuine issue of material fact exists and State Defendants are entitled to judgment as a matter of law. State Defendants' dispositive motion takes seriously (and meets) the summary judgment standard imposed by Federal Rule of Civil Procedure 56 and Northern District Local Rule 56-1. There

is nothing to suggest inadequate investigation by counsel, or other sanctionable conduct by counsel or State Defendants.

And the cases Plaintiff cites to for sanctions do not support his argument. First, the *Malin* case Plaintiff cites (ECF 145-1 at 48) does not include the quoted text immediately preceding its citation. *See Malin v. Hospira, Inc.*, 762 F.3d 552 (7th Cir. 2014). Further, while the opinion includes a section criticizing the defendant's summary judgment practice, *id.* at 564, Plaintiff offers no argument as to how Hospira's dispositive motion or related practice is comparable to that of Defendants here as to sanctionable conduct (it is not). *See* (ECF 145-1 at 48). Next, the *Littler* case likewise does not support Plaintiff's request for sanctions. *See Littler v. Martinez*, No. 2:16-CV-00472-JMS-DLP, 2020 WL 42776 (S.D. Ind. Jan. 3, 2020). In *Littler*, the court granted sanctions against several defendants and their counsel pursuant to a summary judgment motion submitted with supporting false testimony from the defendants, where defense counsel had failed to disclose to the *pro se* prisoner plaintiff a range video that contradicted said testimony. *See id.* at *1-2. Plaintiff does not even attempt to articulate how State Defendants or their counsel have committed similar conduct (they have not). [*See* ECF 145-1 at 49].

Finally, in the *Meeks* case cited in Plaintiff's argument for sanctions, the Court of Appeals for the Seventh Circuit imposed sanctions not against a party filing a frivolous dispositive motion, but rather against a party filing a frivolous request for sanctions under Federal Rule of Appellate Procedure 38. *Meeks v. Jewel Companies, Inc.*, 845 F.2d 1421, 1422 (7th Cir. 1988). Plaintiff's boilerplate request for sanctions, which does not grapple with the facts of the case, let alone analogize them to the referenced caselaw, is the sort of frivolous request that the *Meeks* court warned about. [ECF 145-1 at 49]. In any case, because Plaintiff has failed to present any cogent argument under Rule 11 or the Federal Rules generally, sanctions should not be granted against State Defendants. State Defendants are entitled to summary judgment in their favor.

### IV. Granting summary judgment for State Defendants would not violate Plaintiff's right to a jury trial.

Plaintiff argues that granting summary judgment for State Defendants would "usurp [his] constitutionally-secured right" under the Seventh Amendment to a jury trial. [ECF 145-1 at 49-50]. However, summary judgment is appropriate here, as Plaintiff fails to create a dispute of material fact through his many unsupported assertions and twisting of the factual record. Summary judgment must be entered against a party that fails to make a showing sufficient to establish the existence of an element essential to his case on which he has the burden of proof at trial. *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001); (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Here, contrary to Plaintiff's assertions otherwise, he has shown no dispute of material facts. Throughout Plaintiff's response in opposition, his response to State Defendants' Statement of Material Facts, and his additional material facts, Plaintiff continually makes unsupported assertions attempting to contradict State Defendants' Statement of Material Facts or blatantly mischaracterizes the evidence in the record. Plaintiff fails to point to evidence that supports the essential elements of his case against State Defendants and relies only on mere allegations from his pleadings.

Plaintiff incorrectly asserts that this Court granting summary judgment against him would "improperly invad[e] the province of the jury" to decide issues of fact, in violation of the Seventh Amendment. [ECF 145-1 at 49-50]. This is wrong. To support this, Plaintiff cites several cases[22] discussing the seventh amendment jury trial right. (*Id*). None of these cases is on point, as each found that there was a factual question to answer that Court had not found before. First, Plaintiff cites to *Perttu v. Richards* which held that a prison plaintiff is entitled to a jury trial under Prison Litigation Reform Act when the matter of administrative exhaustion is intertwined with the merits of a claim. 605 U.S. 460, 467 (2025). Plaintiff attempts to make *Perttu* much broader than it actually is, as the

[22] Plaintiff also cites to one law review article, a dissenting opinion, and a District Court opinion from the District of North Dakota. None are binding precedent on this Court.

Supreme Court found that administrative exhaustion was a triable fact issue under the PLRA. *Id.* Next, Plaintiff cites *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 720 (1999) to support the idea that State Defendant's intent is a factual question that can only be reserved for the jury. Again, Plaintiff looks to extend the case beyond what it actually holds. *City of Monterey* decided whether there was a common-law right to a jury trial for a regulatory taking and what the jury's role was in deciding if a party was deprived of all economically viable use of its property related to regulatory takings. *Id.* at 721. The rest of the cases where Plaintiff cites to a majority opinion are even less persuasive, as they are all cases regarding summary judgment that predate the Supreme Court's holdings in *Celotex Corp. v. Cartett*, 477 U.S. 317 (1986) and *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871 (1990). Plaintiff does not engage with the summary judgment standard under Fed. R. Civ. P. 56(e) or the relevant caselaw. Plaintiff cites no cases discussing any material fact issues in Eighth Amendment cases or any Seventh Circuit precedent related to how granting summary judgment when there is no genuine issue of material fact would violate his Seventh Amendment jury trial right.

In fact, the Seventh Circuit has flatly rejected, as a legal principle, that appropriately granted summary judgment violates a party's Seventh Amendment jury trial right. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006). "The Seventh Amendment does not entitle parties to a jury trial when there are no factual issues for a jury to resolve." *Id.* Any argument that summary judgment and Rule 56 violate the Seventh Amendment jury trial right "flies in the face of firmly established law." *Id.* An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The "mere existence of a scintilla of evidence in support of the plaintiff's position" will not suffice. *Id.* at 252.

Here, in applying the appropriate summary judgment standard, this Court would *not* violate Plaintiff's Seventh Amendment jury trial right. As Plaintiff has not shown a genuine dispute of material fact, including on intent, summary judgment is appropriate as there are no factual issues for a jury to

resolve. Any argument that granting summary judgment in Plaintiff's case would violate his jury trial right "flies in the face of firmly established law." *Burks*, 464 F.3d at 759. Summary judgment in favor of all State Defendants is appropriate.

**CONCLUSION**

WHEREFORE, State Defendants, by counsel, respectfully request the Court their motion for summary judgment on all claims against them, and for all just and proper relief.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Atty. No. 18857-49

Date: March 27, 2026 By: */s/ Gustavo A. Jimenez*
Gustavo A. Jimenez, No. 35866-53
Allison F. Mauk, No. 38266-84
David M. Price, No. 37729-29
Deputy Attorney Generals

OFFICE OF ATTORNEY GENERAL TODD ROKITA
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
(463) 261-7372
Fax: (317) 232-7979
Allison.Mauk@atg.in.gov
Gustavo.Jimenez@atg.in.gov
David.Price@atg.in.gov

*Attorneys for State Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I further certify that on March 30, 2026 I mailed, by United States Postal Service, first-class postage prepaid, the document to the following non-CM/ECF participants:

LeeTravis Griffin,
DOC #233943
Indiana State Prison
1 Park Row
Michigan City, IN 46360
*Pro Se Plaintiff*

*/s/ Gustavo A. Jimenez*
Gustavo A. Jimenez
Deputy Attorney General